Leslie H. MOORE, Jr., Betty B. Moore, Plaintiffs,

v.

LITTLE GIANT INDUSTRIES, INC., a Utah Corporation, Defendant.

Civ. A. No. 80–431.

United States District Court, D. Delaware, Wilmington Division.

May 14, 1981.

John P. Daley, Wilmington, Del., for plaintiffs.

Richard R. Wier, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

In this diversity case, the nonresident defendant has moved to have the action dismissed for lack of *in personam* jurisdiction, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In the event that the Court finds jurisdiction, it moves for transfer of the action pursuant to 28 U.S.C. § 1404(a), or a stay of the action pending resolution of a similar action in the Utah state courts. In deciding whether it has personal jurisdiction over the defendant, the Court confronts several novel legal issues under Delaware's long-arm statute, 10 *Del.C.* § 3104. The Court concludes that a manufacturer who ships goods into Delaware is within the Court's jurisdiction under the statute; that exercise of jurisdiction is not barred by the Due Process Clause; and that neither transfer nor a stay is warranted.

## I. *Factual Background*

This case is a products liability action in which plaintiffs Leslie and Betty Moore seek damages against defendant Little Giant Industries, Inc. ("Little Giant") for injuries sustained by Leslie Moore while using a ladder manufactured by Little Giant. Plaintiffs allege that defendant was negligent in the design and manufacture of the ladder, and that defendant breached an implied warranty of merchantability. Jurisdiction is asserted under 28 U.S.C. § 1332; plaintiffs are residents of Delaware and defendant is a Utah corporation with its principal place of business in Utah.

The circumstances surrounding the purchase of the ladder are of critical importance to the issue of jurisdiction. The Court finds the following facts, on the basis of the affidavits and other supporting materials filed by the parties. In February 1979, Leslie Moore attended a trade show in Minnesota at which defendant and a number of other manufacturing concerns had sales booths. He was given literature describing a special offer on Little Giant ladders, which provided that customers who purchased ladders at the show would get "free freight." Plaintiff bought and made payment on a ladder while at the show, and indicated on the purchase order that defendant should ship the ladder to plaintiff's Delaware address. The purchase order was approved at defendant's home office in Utah, and defendant shipped the ladder to Delaware by common carrier, f. o. b. Utah.

It is undisputed that Little Giant has no employees, agents, or offices in Delaware, does no advertising there, and has made no other shipments to the state.

## II. *Legal Issues*

Defendant's motions for dismissal, transfer, or stay of the action will be considered in turn.

### A. *Motion to Dismiss for Lack of Jurisdiction*

■ Determining whether this Court has jurisdiction over defendant involves a two-step analysis. The Court must first determine whether the Delaware long-arm statute, 10 *Del.C.* § 3104, provides for jurisdiction in this case, a question of statutory construction. If the Court finds that it does, then the Court must decide whether exercise of that jurisdiction would offend the Due Process Clause of the Fourteenth Amendment. *See, e. g., Beaty v. M.S. Steel Co.,* 401 F.2d 157, 159 (4th Cir. 1968).

### 1. *Delaware Long-Arm Statute*

The Delaware long-arm statute, like other statutes modelled on the Uniform Interstate and International Procedure Act, sets out a number of grounds on which jurisdiction can be asserted. In relevant part, the statute provides as follows:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; . . . .

10 *Del.C.* § 3104(c). Plaintiffs seek to premise jurisdiction in this case on subsections (c)(1), (2), and (3); it is conceded, as it must be, that subsection (c)(4) does not apply here.

■ Plaintiffs suggest that subsection (c)(1) may support their claim of jurisdiction, on the basis that defendant "transacted business" in Delaware. The contract was executed elsewhere, and performed substantially, if not entirely, out-of-state. Though this subsection is to be construed expansively, *see Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.,* 505 F.Supp. 777, 780 (D.Del.1980), it does not confer jurisdiction over the defendant in this case. Neither the solicitation, the filing of the purchase order, nor the payment occurred when either party was in Delaware. The only contact with Delaware was defendant's shipment of the ladder into the state. Shipment of goods into a state by common carrier, without more, does not constitute "transaction of business." *See, e. g., Pennington v. Toyomenko, Inc.,* 512 F.2d 1291 (5th Cir. 1975). The Court holds, therefore, that subsection (c)(1) does not apply.

■ Plaintiffs also contend, half-heartedly, that subsection (c)(3) might confer jurisdiction. The Court finds no support for this position. The "acts and omissions" that allegedly led to plaintiff's tortious injuries pertain to the design and manufacture of the ladder. *See* Complaint ¶ 9. It is undisputed that all activities involving the ladder's design and manufacture took place in Utah. Plaintiffs' suggestion that the "tortious act" should be deemed to have occurred where the injury took place would eviscerate the distinction between subsections (c)(3) and (c)(4) of the statute, and must therefore be rejected under generally-accepted principles of statutory construction. *See Mergenthaler v. State,* 239 A.2d 635 (Del.1968).

Plaintiffs rely most heavily on subsection (c)(2), arguing that defendant is within the Court's jurisdiction because it "contracted to supply . . . things" in Delaware by undertaking shipment of the ladder. As the state courts have yet to construe this subsection of the statute, this Court must in-

terpret the provision as it anticipates the state courts would. *See Wilmington Supply Co., supra* at 779.

Subsection (c)(2) would seem, on its face, to apply in this case, in that defendant does not dispute that, as part of its contract with Moore, it agreed to ship the ladder to him in Delaware and to assume the freight costs. Defendant makes three independent arguments as to why subsection (c)(2) should be held not to apply here. First, defendant notes that because shipment was made f. o. b. Utah, the contract was completely performed in Utah, at the point defendant delivered the ladder to the common carrier, *see* U.C.C. § 2–206(1)(b), and that title passed to the buyer then, *see* U.C.C. § 2–401(2)(a). In the Court's view, however, that does not settle the question whether, for purposes of the long-arm statute, defendant "contracted to supply things" in Delaware. Given that the defendant undertook to ship the ladder and assumed the shipment costs, the Court rejects as hypertechnical any reading of subsection (c)(2) as inapplicable here because the ladder was sent f. o. b.

Second, defendant contends that subsection (c)(2) is inapplicable to the instant case because the case fits within subsection (c)(4), which addresses personal injury cases involving diverse parties. Defendant argues that under the rules of statutory construction, subsection (c)(4) controls the other, more general subsections of the statute with regard to jurisdiction in this case. On this reasoning, if plaintiff cannot establish jurisdiction under subsection (c)(4), he is precluded from doing so under subsection (c)(1), (2), or (3). The argument fails, however, because some overlap was intended between the jurisdictional bases set out in § 3104(c), as the legislative history makes clear. Insofar as the Delaware long-arm statute was closely modelled on the Uniform Interstate and International Procedure Act, *see Eudaily v. Harmon*, 420 A.2d 1175 at 1176 (Del.1980), the Court may look to the Commissioners' Comments on the Act in determining how to interpret the law, *see Wilmington Supply Co., supra* at 780. The

relevant Comment states that the enumerated bases of jurisdiction were not intended to be mutually exclusive:

> Each of the subdivisions in subsection [(c)] will independently support jurisdiction. In some instances, a jurisdictional basis may be found under more than one subdivision. Thus, a defendant's liability may arise under subdivision (1) "transacting business" and either subdivision (3) "causing tortious injury by an act or omission in this state" or subdivision (4) "causing a tortious injury in this state by an act or omission outside this state."

Comment to § 1.03(a) of Uniform Interstate and International Procedure Act. Thus, it is not inconsistent with the intent of the draftsmen to apply (c)(2) in a case in which (c)(4) might also have applied. To the extent that *Hill v. Morgan Power Apparatus Corp.*, 259 F.Supp. 609, 611 (E.D.Ark.1966), *aff'd*, 368 F.2d 230 (8th Cir. 1966) (construing same subsection of Arkansas long-arm statute) is to the contrary, the Court is unwilling to follow that decision.

Finally, defendant argues that subsection (c)(2) does not apply here on the ground that the causes of action asserted do not "arise from" the act on which plaintiff seeks to premise jurisdiction, as required under § 3104(c). Defendant contends that the causes of action set out in the complaint arise from defendant's alleged negligence in manufacturing the ladder rather than from the contract of sale. Leaving aside the issue whether plaintiffs' implied merchantability count, *see* Complaint ¶ 13, sounds in contract or tort, the Court believes that this argument is also disposed of by the Commissioners' Comments on the Uniform Act. The relevant Comment states:

> Each of the subdivisions will support a cause of action under any theory of law. For example, a claim arising from "transacting business" may sound in contract, tort, or quasi contract. . . . The concept of cause of action or claim for relief should be broadly construed to cover an entire transaction. . . .

On the basis of this commentary, the Court holds that the "arising from" language in

the statute is sufficiently broad to encompass plaintiffs' claims.

■ Having rejected defendant's objections to finding jurisdiction under § 3104(c)(2) in this case, the Court must determine whether applying subsection (c)(2) here would be consistent with the statute's purpose. This Court has held that § 3104(c)(1) was intended to reach the outer limits of personal jurisdiction permitted under the Due Process Clause, *see Wilmington Supply Co., supra* at 780. A number of courts have construed long-arm statutes essentially identical to § 3104(c) as conferring jurisdiction to the constitutional limits. *See, e. g., CMI Corp. v. Costello Construction Corp.*, 454 F.Supp. 497, 499 (D.Okl. 1977); *Martin v. Kelley Electric Co.*, 371 F.Supp. 1225, 1227 (D.Ark.1974). In view of the intent of the draftsmen to extend jurisdiction as far as possible within the limits of the Due Process Clause, the Court holds, as a matter of statutory construction, that § 3104(c)(2) confers personal jurisdiction over the defendant in this case. This holding is consistent with the Delaware Supreme Court's analysis of the Delaware long-arm statute as a "single act" statute, "a type of long-arm statute establishing jurisdiction over nonresidents on the basis of a single act done or transaction engaged in by the nonresident within the state." *Eudaily, supra* at 1176 n.1.

### 2. *Constitutional Limits on Jurisdiction*

■ The Court must next determine whether exercise of the jurisdiction conferred by the long-arm statute would offend the Due Process Clause of the Fourteenth Amendment. The well-established point of departure is that certain "minimum contacts" must exist between a State and a nonresident defendant before that State can exercise personal jurisdiction over him. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This constitutional limitation on personal jurisdiction reflects a dual concern, for a State's legitimate interest in adjudicating a dispute, on the one hand, and for the burdens entailed for the defendant in

litigating in a particular forum, on the other. *See, e. g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Empire Abrasive Equipment v. H. H. Watson, Inc.*, 567 F.2d 554, 557 (3d Cir. 1977). If exercise of jurisdiction would overstep the bounds on State sovereignty or offend "traditional notions of fair play and substantial justice," *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940), then the Due Process Clause forbids such exercise.

Though there has been a liberalization of the restrictions on personal jurisdiction, *see, e. g., Hanson v. Denckla*, 358 U.S. 235, 250, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court recently reaffirmed that jurisdiction had never been found in the absence of any affiliations between the forum state and a nonresident defendant. *World-Wide Volkswagen, supra*, 444 U.S. at 294, 100 S.Ct. at 565. In the *Volkswagen* case, the Court held that Oklahoma state courts did not have personal jurisdiction over a New York automobile retailer in a case where the only "contact" alleged was that a car the defendant had sold to New York residents in New York was subsequently involved in an accident in Oklahoma. The defendant retailer did no business in Oklahoma, had no office or agents there, did no advertising there, and had not shipped any cars there. *Id.* at 289, 100 S.Ct. at 563.

One of the central questions in the *Volkswagen* case, as in this case, is the relation between jurisdiction and "foreseeability" of suit. On this point, the Court stated:

[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.... Hence if the sale of a product of a manufacturer ... is not simply an isolated occurrence, but arises

from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been a source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–98, 100 S.Ct. at 567–68 (citations omitted). The instant case is difficult precisely because it fits into either of two categories which the Court intended to be mutually exclusive. On the one hand, defendant's connection with Delaware was "an isolated occurrence." On the other hand, the contact undeniably resulted from defendant's efforts "to serve, directly or indirectly, the market for its product" there. While defendant did not attempt to serve the Delaware market directly, plaintiff purchased the ladder at a trade fair, where, one may infer from the "free freight" offer, defendant sought to make sales to out-of-state customers. Because of the approval of the purchase order by the home office, defendant was fully aware that it was sending the ladder to a Delaware purchaser. Thus, unlike *Volkswagen*, this is not a case in which, without defendant's knowledge, his product found its way into Delaware.

In this era of advanced communications and transportation capabilities, it is now possible to accomplish by telephone and through the mails business activities which formerly required physical presence in a state. In recognition of this change, courts have retreated from a rule requiring physical presence as the basis for *in personam* jurisdiction. A state has no less an interest in providing its residents with a forum in which to litigate claims arising from defective goods if a manufacturer ships his goods into the state than if he (or his agent) physically enters the state to deliver them. In either case, the manufacturer is serving the market in the state and is deliberately injecting his goods into the stream of commerce there. The Court concludes, therefore, that with regard to Delaware's interest in adjudicating this dispute, exercise of jurisdiction over the defendant in this case would not be incompatible with the Due Process Clause.

■ Turning to the other factor in the constitutional calculus, that of the burden on the defendant, the Court holds that it would not be unfair or unreasonable to require defendant to defend this action in the forum of plaintiffs' choice. The burden on defendant in litigating in Delaware would be roughly comparable to that on the plaintiffs were they required to litigate the matter in Utah. Whereas the officials and employees of defendant corporation, and documents pertaining to the design and manufacture of the ladder are located in Utah, plaintiffs, the medical records, the treating physicians, and the ladder are all in Delaware. Defendant contends that the corporation will be forced to cease operations if "any or all" of six "key witnesses," officials of the corporation, are forced to come to Delaware to testify "for any period of time." Defendant's Opening Brief at 29. If that is true, such would also be the case if they were required to appear in court in Utah as well; this differential burden as between a trial in Utah and one in Delaware is too speculative for the Court to assess. In view of the comparability of the burdens, and the recognized interest of plaintiffs in obtaining convenient and effective relief, *see Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978), the Court holds that it would not offend "traditional notions of fair play and substantial justice" to allow jurisdiction in this case.

There is ample support for predicating jurisdiction on a single "contact" between a nonresident defendant and the forum State. As the Delaware Supreme Court has stated, the Delaware long-arm statute "[establishes] jurisdiction over nonresidents on the basis of a single act . . . .", *Eudaily, supra* at

1176 n.1. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the United States Supreme Court allowed jurisdiction over a nonresident defendant that had never solicited business in the forum State, and had done business there only in connection with the single policy sued on. *Id.* at 222, 78 S.Ct. at 200. Under a long-arm statute essentially the same as Delaware's, Oklahoma courts have, in a number of cases, upheld jurisdiction as to a nonresident defendant "where the nonresident defendant was a seller who has shipped goods into Oklahoma, even where such shipment was an isolated or infrequent occurrence," *Smith Lighting Sales, Inc. v. Blahut*, 462 F.Supp. 434, 436 (W.D.Okl.1978).

As for the sufficiency of a seller's shipment of goods into a state as a "contact," *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir. 1965), is on point. The plaintiff, a Minnesota resident, had allegedly been injured while using a baler and brought a personal injury action against the Michigan corporation that manufactured the baler. Though the defendant corporation had for a number of years sold its goods to Minnesota residents through independent salesmen, it had no office or employees in Minnesota, and made its shipments to Minnesota f. o. b. Michigan. Judge Blackmun, writing for the panel, upheld jurisdiction against a constitutional challenge:

> Economy's balers, including this particular one, were shipped by it directly into the state and directly to the customer. . . . Economy knew of the baler's destination and of the Minnesota identity of the purchaser. It voluntarily placed its product on the Minnesota market, derived benefit therefrom, received the protection of Minnesota laws, and reasonably could have anticipated that this activity would have consequences in the state.

*Id.* at 197. The Court held that the seller's deliberate injection of his goods into the stream of commerce in the forum State by shipment was an adequate basis for finding jurisdiction.

Defendant relies heavily on a case in which, on facts similar to those in the instant case, the action was dismissed for lack of jurisdiction. The case, *Golden Belt Manufacturing Co. v. Janler Plastic Mould Corp.*, 281 F.Supp. 368 (M.D.N.C.1967), involved a suit for breach of contract brought by a North Carolina corporation against an Illinois corporation. After receiving a purchase order from the plaintiff, the defendant shipped a mold to North Carolina, f. o. b. Chicago. Plaintiff brought suit in North Carolina, alleging that the mold was defective, and defendant moved to dismiss for insufficient service of process. The Court granted the motion:

> To subject the defendant to suit in the state where it has never solicited, advertised, or transacted business and where its only contact is the contract in suit, which was made and substantially performed in another state, would serve no useful purpose in the promotion of interstate commerce.

*Id.* at 371. Unlike in the instant case, both parties were *corporations*, and the Court specifically indicated that both could bear the financial burden of litigating in a foreign forum. *Id.* More importantly, however, analysis of the effect on interstate commerce is no part of the inquiry whether jurisdiction is permissible under the Due Process Clause. In the Court's view, *Golden Belt* is not in conformity with the trend of recent decisions on this issue, and the Court declines to follow it.

B. *Motion to Transfer or Stay the Delaware Action*

 The Court denies the motion to transfer the action to Utah, for the reasons stated in the foregoing discussion, *see* p. 1049, *supra*. Under the law in this Circuit, courts should not override plaintiffs' choice of forum unless the balance of convenience is *"strongly* in favor of [the] defendant." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Defendant has the burden of persuasion, *see Mayer v. Development Corporation of America*, 396 F.Supp. 917, 932 (D.Del.1975), and has not carried it.

Finally, defendant moves for a stay of the Delaware action pending resolution of a similar action filed by plaintiffs in the Utah state courts. Leslie Moore indicates in his affidavit that Delaware is his forum of choice, and that the Utah action was filed only to avoid possible problems involving the statute of limitations should the Delaware action be dismissed. *See* Moore Affidavit ¶ 7. In deciding motions for a stay, the Court weighs the same considerations of comity, convenience, and efficiency as are weighed in deciding motions for transfer. *See, e. g., Stauffer Chemical Co. v. FMC Corp.*, 218 F.Supp. 568 (D.Del. 1963). No evidence has been adduced in support of defendant's assertion that the Utah action could be decided more expeditiously than the action in this Court, *see* Defendant's Opening Brief at 33. In view of the relatively speedy disposition of cases in this Court, and the importance of respecting plaintiffs' choice of forum where doing so will not result in injustice, the Court denies the motion for a stay.

So Ordered.