**BLUE BALL PROPERTIES, INC., Cherry Island Farm, Ltd., and Chillison's Island, Ltd., all Delaware corporations, Plaintiffs,**

v.

**Gee McCLAIN, Defendant.**

**Civ. A. No. 86–464–JLL.**

United States District Court, D. Delaware.

April 13, 1987.

---

Richard P. Beck of Morris, James, Hitchens & Williams, Wilmington, Del., for Blue Ball Properties, Inc., Cherry Island Farm, Ltd., and Chillison's Island, Ltd.

Nicholas H. Rodriguez and William W. Pepper of Schmittinger & Rodriguez, P.A., Dover, Del., for Gee McClain.

LATCHUM, Senior District Judge.

Presently before the Court is a motion by the defendant, Gee McClain ("McClain"), to dismiss the action against him due to a lack of personal jurisdiction and improper venue. *See* Fed.R.Civ.P. 12(b)(2) and (3). The plaintiffs, Blue Ball Properties, Inc., Cherry Island Farm, Ltd., and Chillison's Island, Ltd. (collectively "the plaintiffs"), brought

suit against McClain for failure to perform a contract to construct a deep water pier in Maryland. The plaintiff's complaint sets forth three counts which pray for relief on grounds that McClain (1) breached the contract, (2) defrauded the plaintiffs, and (3) was negligent, reckless, and willfully tortious in his actions.

Naturally, the plaintiffs oppose the motion to dismiss. The plaintiffs contend that the Delaware long arm statute, 10 *Del.C.* § 3104, gives this Court personal jurisdiction over McClain and that exercising this jurisdiction will not infringe on McClain's rights under the Due Process Clause of the Fourteenth Amendment.[1] In order to make a well reasoned decision, the Court held an evidentiary hearing on March 17, 1987, at which McClain and W.A. Bundesen II ("Bundesen"), president of the plaintiff corporations, testified. After reviewing the testimony and evidence presented at the hearing, the parties' briefs with supporting affidavits, and the applicable law, the Court holds for the reasons discussed in this opinion that the long arm statute does not give this Court personal jurisdiction over McClain and that due process considerations would preclude this Court from exercising personal jurisdiction over McClain even if the Court did have personal jurisdiction. Therefore, McClain's motion to dismiss for lack of personal jurisdiction will be granted.

## BACKGROUND

The parties agree on the facts up to a point at which their factual contentions sharply diverge. The undisputed facts shall be discussed first, then each party's view of the remaining facts shall be set forth.

The plaintiffs are all Delaware corporations with offices in Montchanin, Delaware. (Docket Item ["D.I."] 1 at ¶ 1.) Plaintiff Cherry Island Farms, Ltd., holds title to approximately 280 acres of land (the "Farm") on Beckwith Creek and Little Choptank River at the point of Morris Neck in Dorchester County, Maryland. (D.I. 1 at

---

**1.** Subject matter jurisdiction in this Court is based on diversity of citizenship under 28 U.S.C. § 1332.

¶ 6.) Plaintiff Chillison's Island, Ltd., holds title to an island in Beckwith Creek (the "Island"). The Farm provides access to and utilities for the Island. (*Id.* at ¶ 8.) Plaintiff Blue Ball Properties, Inc., has chartered a yacht on a long term basis for use between the Farm and Island and for the entertainment of business guests. (*Id.* at ¶ 11.) Bundesen is the president of all three corporations. (*Id.* at ¶ 13.)

The defendant, McClain, is a general contractor and pile driver who resides and works in Maryland. McClain is not licensed to do business in Delaware nor has he ever done work in Delaware. (D.I. 8A [Affidavit of Gee McClain] at ¶¶ 2, 3.) Additionally, at the evidentiary hearing McClain testified that he has never advertised for business, had an agent, or maintained a bank account in Delaware.

The plaintiffs decided to reconstruct a deep water pier along the Beckwith Creek shore of the Farm at the site of the remains of a former pier. Some time in February 1986, Stokes Keyes, the Farm's caretaker, contacted McClain in Maryland and asked him for an estimate of the cost to remove the old pilings and construct a new pier. (D.I. 8A at ¶ 4.) McClain made a preliminary check of the site approximately the second week of March. About a week later, Bundesen and McClain met at the Farm for the first time. McClain gave Bundesen a written estimate at this meeting. (*Id.*) Bundesen sought other estimates in the following weeks prior to meeting with McClain at the Farm for a second time. At the second meeting, which occurred sometime around the middle of April, Bundesen asked McClain to lower his price. McClain agreed to reduce the price by $1,500 and gave Bundesen a handwritten contract reflecting the new price. (*Id.* at ¶ 5.) Bundesen told McClain that he would call him if Bundesen's principals agreed to the new price. Bundesen called McClain several days later to tell him the new price had been accepted. He asked McClain to type up a contract reflecting their agreement and mail it to him. McClain mailed the contract to Montchanin, Delaware. (*Id.*)

The parties disagree considerably about the events following Bundesen's receipt of the contract. Plaintiffs contend that after receiving what they characterize as McClain's "offer" (D.I. 1 at ¶ 14), Bundesen called McClain in Maryland and claims they agreed to modify the so-called offer to reflect correctly the terms of their first agreement by specifying that work on the pier would commence by June 15, 1986, and that the pier would include a "50' T Head." (*Id.* at ¶ 16 and D.I. 8A at ¶ 5.) According to the plaintiffs, once these changes were made, Bundesen signed the contract and mailed it back to McClain in Maryland. (D.I. 1 at ¶ 17.) McClain does not dispute that this call took place, but contends that he met with Bundesen at the Farm for a third time after the call and that at this meeting McClain authorized the change of date for commencing work and Bundesen signed the contract. (D.I. 8A at ¶ 9.)

The contract was dated April 20, 1986, and expressly provided that McClain would be paid half the contract price within seven days of the date the contract was accepted. This payment was not made as scheduled. The plaintiffs claim that McClain called Bundesen sometime after the middle of May to request that payment be made. (D.I. 1 at ¶ 18.) At the evidentiary hearing, Bundesen testified that he had decided not to send the check until McClain started work, because he did not know McClain. McClain testified that he could not order the materials for the job until the money had been received. He made his request for the money through Stokes Keyes and he never called Bundesen in Delaware to ask for the money.

The parties agree that a check for $13,750, dated May 22, 1986, was drawn by Cherry Island Farm, Ltd., on an account at the Wilmington Trust Company. (D.I. 1 at 18.) Although the plaintiffs' complaint alleges the check was mailed to McClain (*id.*), Bundesen testified at the evidentiary hearing that he hand delivered the check to McClain at the Farm. McClain agreed that

the check was hand delivered.[2] Once McClain had received the check, he placed an order for the pilings and lumber needed to build the pier. (D.I. 8A at ¶ 7.) McClain testified that the pilings were delivered on June 19, 1986.

McClain contends he was unable to proceed immediately with the construction of the pier, because his barge which was needed to drive piles had sunk at another job site. He testified that the barge was in several feet of water, so it could be pumped out for use at the other site, but that it was not in a condition to allow for the approximately forty-five mile move to the Farm. After determining that his barge could not be moved, McClain contacted several other contractors in the middle of May to see whether they could drive the piles. None were available to do this. McClain then sought to find a barge to rent. He contacted a number of potential sources before agreeing to rent a barge from Black Dog Marine. The barge was in Norfolk, Virginia, at the time McClain allegedly entered into a minimum three month rental, but was to be made available to McClain on June 30, 1986. The barge was not actually made available until the end of July 1986. McClain testified that he did not proceed with the job, because he received a letter dated August 6, 1986 (Plaintiffs' Exhibit 1), from the plaintiffs' attorney stating that McClain was in default on the contract and that he should not do any more work on the project. McClain claims to have been surprised by this letter, because he contends Bundesen was aware of the problems with the barge. (*Id.*)

Bundesen claims that he was not kept apprised of McClain's alleged efforts to obtain a barge and commence work. (D.I. 9A at ¶ 3.) Bundesen testified that McClain did not tell him about the problems with the barge until late June 1986 and that McClain never informed him that a barge had been rented. Bundesen con-

tends that his numerous calls to McClain to check the status of the project were seldom returned and that when they were returned, McClain gave false assurances that work would commence immediately. (*Id.*) McClain acknowledged that he made approximately ten calls to Delaware, but only in response to Mr. Bundesen's messages.

After the August 6, 1986 letter from the plaintiffs' attorney to McClain, all progress or potential for progress ceased. Eventually, the plaintiffs contracted with someone else to build the pier. According to McClain, the pilings he ordered and had delivered to the Farm were used. Plaintiffs did not refute or question this contention. McClain testified that he paid over $7,000 to William E. Burton Lumber for the pilings and that the remainder of the money he received from the plaintiffs is in a safe deposit box in the National Bank of Cambridge.

## ANALYSIS

The preceding statement of facts details the chronology of events surrounding the contract so as to provide a clear understanding of how this dispute arose. Many of these facts do not affect the resolution of the motion before the Court. At the evidentiary hearing, plaintiffs' counsel in particular attempted to pursue lines of questioning on matters which may be relevant to the ultimate resolution of this case, but are not applicable to this motion to dismiss for lack of personal jurisdiction. The Court will focus its attention on the facts relating to the issues of whether the long arm statute gives this Court personal jurisdiction over McClain and whether minimum contacts between McClain and Delaware exist.

■ The plaintiffs have the burden of establishing personal jurisdiction. *Harmon v. Eudaily*, 407 A.2d 232 (Del.Super. 1979), *aff'd*, 420 A.2d 1175 (Del.Supr.1980). If the Court had proceeded upon just writ-

---

**2.** At the evidentiary hearing the plaintiffs' counsel attempted to discredit McClain's testimony that the check was delivered on a weekend and written by Bundesen after he arrived at the Farm. Counsel repeatedly stated that May 22 was a Monday and strongly implied that if the

check was dated on a Monday, then McClain's versions of the facts must be wrong. The Court does not need to decide whose version of the facts is correct on this point, but notes that May 22, 1986, was a Thursday.

ten submissions, then the plaintiffs would have needed to make a *prima facie* showing that jurisdiction exists, all of the plaintiffs' allegations of jurisdictional fact would have been presumed true and all factual disputes would have been decided in plaintiffs' favor. *See O'Neal v. Huxley Dev. Corp.,* 558 F.Supp. 462, 464 (D.Del. 1983); *Altech Indus. Inc. v. Al Tech Specialty Steel, Corp.,* 542 F.Supp. 53, 55 (D.Del.1982); *Greenly v. Davis,* 486 A.2d 669 (Del.Supr.1984); *Harmon,* 407 A.2d at 233. Instead, the Court exercised its discretion to order an evidentiary hearing. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1010 n. 4, 91 L.Ed. 1209 (1946) ("[W]hen a question of the District Court's jurisdiction is raised ... the court may inquire, by affidavits or otherwise, into the facts as they exist."); *Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1938) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.") When a full evidentiary hearing is held, the plaintiffs must demonstrate that jurisdiction exists by a preponderance of the evidence. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir.1981); *Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.1977). The Court finds that plaintiffs have not borne this burden.

■ The plaintiffs contend this Court has personal jurisdiction over McClain pursuant to the Delaware long arm statute and that asserting this jurisdiction will not offend any due process considerations. It is clearly established that when jurisdiction in a federal court is based on diversity of citizenship, the issue of personal jurisdiction over an out-of-state defendant is a question of state law with federal law only entering in to decide whether a state's assertion of jurisdiction violates a constitutional guarantee. *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.,* 505 F.Supp. 777, 779 (D.Del.1980). Therefore, the Court must examine how the long arm

statute, 10 *Del.C.* § 3104, applies to this case.

Plaintiffs contend that this Court has personal jurisdiction over McClain on the basis of either § 3104(c)(1) or (3). These subsections of the long arm statute provide:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

.        .        .        .        .

(3) Causes tortious injury in the State by an act or omission in this State.

Delaware courts have construed § 3104 liberally to give it the greatest coverage possible in the face of restraints imposed by the Due Process Clause of the Fourteenth Amendment. *Speakman Co. v. Harper Buffing Mach. Co.,* 583 F.Supp. 273, 275 (D.Del.1984); *Transportes Aereos de Angola v. Ronair, Inc.,* 544 F.Supp. 858, 864 (D.Del.1982); *Moore v. Little Giant Indus., Inc.,* 513 F.Supp. 1043, 1048 (D.Del. 1981), *aff'd,* 681 F.2d 807 (3d Cir.1982); *Waters v. Deutz Corp.,* 460 A.2d 1332, 1334–35 (Del.Super.1983), *aff'd,* 479 A.2d 273 (Del.Supr.1984). Additionally, Delaware courts have established a two-step process to decide whether to dismiss for lack of personal jurisdiction. First, a court must determine whether the alleged conduct of a defendant comes within one of the provisions of the long arm statute. If the conduct is within the statute, then the court must proceed to consider whether the exercise of jurisdiction over a particular defendant violates due process interests. *Afros S.p.A. v. Krauss-Maffei Corp.,* 624 F.Supp. 464, 466 (D.Del.1985); *Transportes Aereos,* 544 F.Supp. at 864; *Moore,* 513 F.Supp. at 1046. The Court will follow this two-step process to resolve this motion.

## A. Long Arm Statute

Section 3104 of the Delaware long arm statute is modeled after the Illinois statute

and construction of the Delaware statute may be made by examining the decisional law of Illinois. *Wilmington Supply*, 505 F.Supp. at 779–80. Consistent with prior Illinois opinions, the Delaware courts have clearly held that personal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction. *Speakman*, 583 F.Supp. at 275; *Wilmington Supply*, 505 F.Supp. at 780; *LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.Supr.1986); *Mid-Atlantic Mach. & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, 492 A.2d 250, 253–54 (Del.Super.1985). The plaintiffs contend that the single act of being a party to the contract allegedly signed in Delaware is sufficient to establish jurisdiction under § 3401(c)(1). (D.I. 9 at 6–7.) Additionally, the plaintiffs argue that McClain's calls to Delaware to request money and to assure Bundesen falsely that work on the pier would commence immediately, as well as the actual cashing of the check, constitute the tortious injury necessary to establish jurisdiction under § 3104(c)(3). (*Id.* at 7–8.)

■ The Court is unconvinced by the plaintiffs' argument that the long arm statute grants a Delaware court personal jurisdiction over McClain. The contacts between McClain and Delaware are insufficient for jurisdiction to be established under § 3104(c)(1) ("[t]ransacts any business or performs any character of work or service in the State").

In *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391 (N.D.Ill.1982), a number of factors were recognized as support for the conclusion that a defendant has transacted business in Illinois within the meaning of Illinois' statutory equivalent to § 3104(c)(1). First, a defendant who initiates a transaction by seeking out an Illinois citizen has satisfied the statute. Second, the necessity under the contract to engage in substantial performance in Illinois supports jurisdiction under the statute. Finally, acceptance of the contract in Illinois supports jurisdiction. The first two of these three factors are clearly absent in this case. The transaction was initiated by the plaintiffs when Stokes

Keyes, an employee of the plaintiffs, sought out McClain for the purpose of obtaining a bid and the contract which was eventually executed between the parties required performance exclusively in Maryland.

The fact that the contract between Bundesen and McClain was formally accepted by plaintiffs in Delaware is the only basis upon which the plaintiffs can reasonably argue that McClain has transacted business within the meaning of § 3104(c)(1). *See Norse Petroleum A/S v. LVO Int'l, Inc.*, 389 A.2d 771 (Del.Super.1978) (contract considered to exist when the final act necessary for its formation takes place). Although this factor weighs in favor of applying § 3104(c)(1) to McClain, the Court holds that standing alone this factor is not enough to support a finding that McClain was doing business in Delaware. The Court emphasizes that this determination is very fact specific. The contract only came to Delaware because Bundesen requested that McClain mail it to him. Given the fact that the terms of the contract were negotiated in Maryland and that performance was to be in Maryland, the Court does not believe that a Delaware state court would hold that acceptance by itself in this case meets the single act requirement of § 3104(c)(1).

The Court's conclusion is supported further by the fact that the *Ronco* court went on to discuss three significant ways the defendant did transact business in Illinois. 539 F.Supp. at 395–96. First, an employee of the defendants went to Illinois to negotiate the contract. Second, the defendants voluntarily and specifically sought the benefits and protection of Illinois law by having the contract state that it would be governed by Illinois law. Finally, the defendants shipped their products into Illinois in substantial volume. None of these three factors supporting the application of § 3104(c)(1) is present in this case. Additionally, in a later case an Illinois court held that mailing partial payments and purchase orders to Illinois is not alone enough to confer jurisdiction upon an Illinois court over a plaintiff who did not initiate the transaction in question. *UNR–Leavitt v.*

*Kimrey*, No. 83–C7046, slip op. at 15 (N.D. Ill.1984).

The case before this Court is unlike previous Delaware cases where personal jurisdiction has been established on the basis of § 3104(c)(1). *See, e.g., Dentsply International Inc. v. Pentron Corp.*, 648 F.Supp. 856 (D.Del.1986); *Mid-Atlantic Machine*, 492 A.2d 250. In *Dentsply*, the defendant contacted the plaintiff to express interest in obtaining a sublicense on a patented product. The defendant sent one of its vice-presidents to the plaintiff's Delaware plant to negotiate an agreement and this vice-president made calls to Delaware for the purpose of continuing the negotiations. In the present case, McClain did not initiate the contact, he never needed to enter Delaware to negotiate the contract, he did not initiate the call to Bundesen which led to the acceptance of the contract, and he mailed the contract to Delaware at the request of and for the convenience of Bundesen.

The *Mid-Atlantic Machine* case involved a defendant corporation which was doing business in Maryland. The defendant placed four orders for ship parts manufactured in Delaware. The plaintiff was a Delaware corporation which had granted the defendant credit. A representative of the defendant went to the plaintiff's offices in Delaware to present plans. The Court held that these contracts were sufficient for jurisdiction to lie under § 3104(c)(1). *Mid-Atlantic Machine* is distinguishable from the present case which does not involve any intentional contact between McClain and Delaware. McClain is much more in a position similar to one of the defendants in *Plumb v. Cottle*, 492 F.Supp. 1330, 1334 (D.Del.1980). The *Plumb* court granted Capital Lighting Protection Company's motion to dismiss because Capital did not sell anything in Delaware, did not maintain an office in Delaware, and did not have a license to do business in Delaware.

■ The Court is equally unconvinced that § 3104(c)(3) confers personal jurisdiction over McClain. The plaintiffs allege that McClain was wilfully tortious in entering a contract that he knew could not be commenced by June 15, 1986, converting the plaintiffs' money for his own use and purposes, and misleading plaintiffs into believing that work would commence immediately, thereby delaying the plaintiffs' realization of McClain's conversion of their monies, postponing their efforts to find a new contractor, and compounding their damages. (D.I. 1 at ¶ 30.) This Court does not need to address whether these claims have merit for purposes of deciding this motion to dismiss. The Court concludes that even if McClain committed any tortious acts, all of his acts or omissions occurred in Maryland. The contract was negotiated in Maryland, McClain's alleged failure to perform occurred in Maryland, and anything he may have done to mislead the plaintiffs was done in Maryland.

■ The plaintiffs' counsel at oral argument repeatedly contended that McClain had tortiously reached into Delaware to obtain money wrongfully from the plaintiffs' account at Wilmington Trust. The Court does not accept plaintiffs' characterization of the facts. The check was delivered by Bundesen to McClain pursuant to the terms of the contract. Whether McClain tortiously induced the delivery of the check knowing that performance was impossible is a question to be resolved at trial, but this Court concludes that the manner of payment was within Bundesen's discretion and that providing McClain with a check drawn on a Delaware bank is not enough to have § 3104(c)(3) apply to McClain. *See Kenny v. Alexson Equipment Co.*, 495 Pa. 107, 432 A.2d 974, 983 (1981) (court held that acceptance of a check, which was merely ancillary to a sale which occurred exclusively in Maryland, cannot be said to constitute purposeful activity within Pennsylvania).

## DUE PROCESS

Even if the long arm statute extended far enough to give this Court personal jurisdiction over McClain, due process considerations would preclude the exercise of such jurisdiction. "[T]he constitutional touchstone" used to determine whether an exercise of personal jurisdiction comports

with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In *Burger King* the Supreme Court reaffirmed the well established reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), that minimum contacts must be based on "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefit and protections of its laws." 471 U.S. at 475, 105 S.Ct. at 2183. As the *Burger King* Court went on to state, "[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)) (emphasis in original).

The plaintiffs argue that the constitutionally necessary minimum contacts were established by McClain's accepting a check drawn on a Delaware bank, by the telephone calls he made to Delaware, and by mailing the contract to Delaware. The plaintiffs go to extremes to make their minimum contacts argument and fail to bring to the attention of the Court cases which weaken their argument.

■ The plaintiffs cite several cases in their attempt to argue that the phone calls made by McClain to Delaware are sufficient to establish minimum contacts. The plaintiffs' brief refers to the fact that in *Wilmington Supply* not only was it recognized that the Delaware long arm statute was patterned after the Illinois statute, but that in at least two cases the Illinois courts have held that "a single phone call into the forum state could provide the basis for personal jurisdiction over a nonresident defendant." 505 F.Supp. at 780. The plaintiffs chose not to discuss these Illinois cases which are both distinguishable from

the present case. *Colony Press, Inc. v. Fleeman,* 17 Ill.App.3d 14, 308 N.E.2d 78 (1974), and *Cook Assoc., Inc. v. Colonial Broach & Mach., Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1973), both involve an out-of-state corporation which called an Illinois corporation to obtain goods or services. The *Cook* court did state that a single contact with Illinois can be sufficient, but went on to emphasize that the defendant initiated the business transaction by telephoning the plaintiff and that the call was essential to create the contract. 304 N.E.2d at 30–31. In both cases, the courts highlighted the fact that performance of the contract occurred in Illinois. *Id.* at 31; *Colony Press,* 308 N.E.2d at 80. The present case is distinguishable because McClain did not initiate the business relationship much less call the plaintiffs in Delaware to initiate the business relationship. He was sought out by Stokes Keyes, an employee of Cherry Island Farm, Inc., in Maryland to give a bid on the pier. Additionally, all the work was to be done in Maryland. If the work was to have been performed in Delaware and McClain had solicited this business, then the plaintiffs' reliance on *Cook* and *Colony Press* to support their minimum contracts argument would be understandable.

The plaintiffs also cite *Kimball v. Schwartz,* 580 F.Supp. 582 (W.D.Pa.1984), and *Sterling Indus. Corp. v. Telephone, Inc.,* 484 F.Supp. 1294 (W.D.Mich.1980), for the proposition that telephone and mail contacts alone can support *in personam* jurisdiction over a non-resident defendant. (D.I. 9 at 10.) Undoubtedly, these cases do stand for this legal proposition, but again this Court concludes that these cases are distinguishable on their facts.

The *Kimball* plaintiff, a Pennsylvania corporation, brought suit against a former employee, a West Virginia resident, for promoting the interest of other companies, including competitors of the plaintiff, while employed to work on behalf of the plaintiff. The defendant used the plaintiff's business phone which was provided in the defendant's West Virginia home to make numerous calls to the other companies all of

which were located in Pennsylvania. The *Kimball* court stated:

> The sufficiency of the contacts with the forum depends upon whether the cause of action arises from events or transactions that are related or unrelated to the forum. If the claim is based on transactions that are unrelated to the forum, the defendant's contacts with the forum must be qualitatively and quantitatively greater than where the cause of action is forum-related.

580 F.Supp. at 586 (citations omitted). Applying these principles to the facts of the case before it, the *Kimball* court held the defendant did have sufficient contacts with Pennsylvania because of his direct and voluntary contact with the State. In the case before this court, McClain only made calls to Bundesen in response to messages left by Bundesen. McClain did not make numerous calls to Delaware on his own initiative to solicit the business of other customers. Unlike the defendant in *Kimball,* who was contacting and providing services for the corporations in Pennsylvania, McClain does not have any other contacts with the State of Delaware.

*Sterling* is equally distinguishable. In this case the defendant, a Michigan corporation, sued to enjoin the enforcement of a judgment obtained by the plaintiff in Pennsylvania. The plaintiff had supplied the defendant with goods after the defendant's president and vice president visited the plaintiff's plant in Pennsylvania for purposes of negotiating a contract. Additionally, the defendant had submitted several purchase orders to the plaintiff by phone or mail. This set of facts exhibits a clear contact between the defendant and the forum state which is not present in the case before this Court. McClain never visited Delaware for purposes of negotiating this contract and only mailed the contract to Delaware because Bundesen requested that he do so. The one call initiated by McClain to request the $13,750 payment was only made because the plaintiffs had failed to perform pursuant to the express terms of the contract. It would be patently unfair to allow the plaintiffs' failure to perform under the contract to serve as the

basis for finding minimum contacts between McClain and Delaware. *See Fischer v. Hilton,* 549 F.Supp. 389, 393 (D.Del.1982) ("[A] single phone call to Delaware does not, in and of itself, constitute purposeful availment.").

The *Sterling* court noted that the only Pennsylvania case which did not find enough minimum contacts from telephone calls and letters is *Gagner v. Parsons & Whittemore, Inc.,* 450 F.Supp. 1093 (E.D. Pa.1978). The plaintiffs chose not to discuss or even acknowledge the existence of this case which is factually much more closely analogous to the present case, than any of the cases cited in their brief. In *Gagner,* a Pennsylvania resident sued his former employer, a New York corporation, in Pennsylvania for failure to pay a bonus allegedly due under an employment contract. Although the plaintiff commuted to the defendant's New York City offices while employed by the defendant, he argued the Pennsylvania court had personal jurisdiction over the defendant because part of the employment contract was negotiated by phone when he was in Pennsylvania and a confirmation letter was sent to Pennsylvania. The *Gagner* court held the contacts were not sufficient. The court explained:

> The correspondence and telephone contacts during the contractual negotiations between the plaintiff's Pennsylvania residence and Fibreclaim's New York offices were not numerous, continuous or of a substantial quality. The major negotiation sessions and execution of the contract occurred in New York. The defendants have committed no purposeful acts to invoke the benefits and protections of the laws of the Commonwealth.

*Id.* at 1096. Likewise, McClain's contacts with Delaware were not numerous, continuous or of a substantial quality and the contract negotiations occurred in Maryland.

■ The Court is equally unconvinced by plaintiffs' argument that calling for, receiving, and cashing the check establishes minimum contacts between Delaware and McClain. Bundesen and McClain disagree on whether McClain called Bundesen to

request the check or made the request through Stokes Keyes. Even if Bundesen's contention that he was contacted directly by McClain is accepted, the Court still concludes that minimum contacts do not exist. McClain testified that he needed the money to order the materials for the pier and that once he received the check, the order was placed promptly. Despite testifying that he initially did not pay McClain the money required by the terms of the contract because he did not know McClain, Bundesen acknowledged on cross-examination that he understood that McClain needed this money to order pilings. As discussed above, it would clearly be unfair to conclude that minimum contacts exist, because McClain was forced into the position of having to contact Bundesen in Delaware. The Court agrees with the reasoning expressed by the Pennsylvania Supreme Court in *Kenny v. Alexson Equip. Co.*, 495 Pa. 107, 432 A.2d 974 (1981). The *Kenny* court rejected the argument that accepting a check drawn on a Pennsylvania bank to pay for a sale that occurred in Maryland established minimum contacts between the defendant and Pennsylvania. The *Kenny* court reasoned, "To accept the reasoning that acceptance of a check drawn on an out-of-state bank is sufficient to constitute minimum contacts with that state is patently absurd. Amenity to suit would be established in any jurisdiction merely on the basis of where the maker of a check decided to maintain a checking account." *Id.* at 983–84. To take plaintiffs' minimum contacts argument to its logical conclusion would mean that minimum contacts would have been established between McClain and any state where the plaintiffs maintained a checking account. The Court reiterates its conclusion that if McClain did engage in any tortious conduct, such conduct occurred in Maryland and suit should have been brought in Maryland. By accepting the check drawn on Wilmington Trust as contemplated by the contract, McClain was not taking an action purposefully to avail himself of the privilege of conducting activities within Delaware nor did he do anything to create a substantial connection with Delaware.

*Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183–84.

■ In addition to determining whether minimum contacts exist, the strictures of the Due Process Clause require this Court to consider whether the exercise of personal jurisdiction over McClain would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). As the Supreme Court most recently reaffirmed in *Asahi Metal Indus. Co. v. Superior Court of California*, —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (citations omitted)):

A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental social policies."

An application of these factors to the present case illustrates the unreasonableness of this Court asserting jurisdiction over McClain.

The burden on McClain of litigating this case in Delaware would be considerable. The Court does not agree with the bald, unsubstantiated claim in Bundesen's affidavit that "[d]efendant's intimation of other witnesses familiar with the contract, all of whom live near Cambridge, Maryland is false and misleading to the best of my knowledge and belief." (D.I. 9A at ¶ 5.) After hearing McClain's testimony during the evidentiary hearing, the Court is convinced that if this case goes to trial, McClain will need to call a number of witnesses. These witnesses would include the contractors McClain contacted to see if they could drive the pilings for the pier and representatives of the companies or the persons from whom he attempted to rent a barge. These potential witnesses are locat-

ed either in Maryland or even further down the Atlantic Coast in Virginia. McClain would probably find it difficult and expensive to have these people testify voluntarily in Delaware. On the other hand, the plaintiffs did not present any evidence that they would need to call a number of witnesses who live in Delaware.

This case does not need to be heard in Delaware to satisfy the interests of the State or the plaintiffs. Delaware at best has a minimal interest in this case. The contract was not negotiated nor was it to be performed in Delaware. As the Court has discussed previously, the fact that McClain received a check drawn on a Delaware bank does not, under the facts of this particular case, establish minimum contacts or give the State a sufficient interest to override other competing considerations. Additionally, the plaintiffs will be able to obtain effective relief in the Maryland courts. Resolving this case in Maryland will provide the most efficient resolution to the controversy. Given the heavy burden on McClain of litigating this case in Delaware and the other consideration of the State's interest, the plaintiffs' interest, and efficiency, the exercise of jurisdiction over McClain in this instance would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

## CONCLUSION

Because the facts of this case do not establish jurisdiction under the Delaware long arm statute or minimum contacts such that the exercise of personal jurisdiction is consistent with fair play and substantial justice, McClain's motion to dismiss will be granted. An order shall be entered in conformity with this opinion.