IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELMARVA POLE BUILDING :
SUPPLY, INC.,     :
         :
    Plaintiff,   :  C.A. No. K18C-11-022 JJC
         :  In and for Kent County
  v.       :
         :
DAVIS RICHARDSON,  :
         :
    Defendant.  :

**MEMORANDUM OPINION AND ORDER**

Submitted:  May 7, 2019
Decided:  May 28, 2019

*Upon Defendant's Motion to Dismiss:  GRANTED*

Nicole M. Faries, Esquire, Baird Mandalas Brockstedt, LLC, Wilmington, Delaware, Attorney for Plaintiff.

Veronica O. Faust, Esquire, Morris James, LLP, Rehoboth Beach, Delaware, Attorney for Defendant.

**Clark, J.**

Defendant Davis Richardson (hereinafter "Mr. Richardson") is a Maryland resident who moves to dismiss Plaintiff Delmarva Pole Building Supply, Inc.'s (hereinafter "Delmarva's") complaint pursuant to Superior Court Civil Rule 12(b)(2) for lack of personal jurisdiction. The record demonstrates that Mr. Richardson's contact with Delmarva in Delaware was limited to telephone calls and emails. The parties met regarding the contract in Maryland, they executed the contract in Maryland, and performance by Delmarva occurred in Maryland. Under the circumstances of this case, the Court does not have personal jurisdiction over Mr. Richardson. Accordingly, Delmarva's motion to dismiss the matter must be **GRANTED**.

### PROCEDURAL BACKGROUND, ARGUMENTS OF THE PARTIES, AND FACTS OF RECORD

The facts of record are those alleged in the complaint and those referenced in the documents and affidavits submitted by the parties. Mr. Richardson and Delmarva contracted for Delmarva to build a pole barn at Mr. Richardson's property in Easton, Maryland. Mr. Richardson is a resident of Maryland, and Delmarva is a Delaware corporation whose principal place of business is in Wyoming, Delaware. All personal contact between the two parties occurred in Maryland, and the parties executed the contract in Maryland. Furthermore, Delmarva presented a Maryland business license number applicable to the Maryland construction job. After Delmarva constructed the building, Mr. Richardson allegedly breached the contract by refusing to pay the amount owed. Delmarva then sued Mr. Richardson in Delaware for breach of contract and unjust enrichment. Mr. Richardson next moved to dismiss the Delaware suit for lack of personal jurisdiction.

In his motion to dismiss, Mr. Richardson argues that none of his alleged actions fit within the criteria of Delaware's Long-Arm Statute, found at 10 *Del. C.* §

2

3104 (hereinafter the "Statute"). He also argues that even if he engaged in an act enumerated in the Statute, his contacts with Delaware would not constitute a "substantial enough connection with this State to make exercise of jurisdiction over the defendant reasonable."[1]

Delmarva counters that Mr. Richardson's solicitation of a Delaware company to complete the Maryland project fits several of the Statute's criteria. It also argues that Mr. Richardson possessed the necessary minimum contacts with Delaware to invoke jurisdiction. Namely, it argues that Delaware workers and materials were used when constructing the building, the building location in Maryland was only 23.2 miles from the Delaware state line, and Mr. Richardson caused them injury. Accordingly, Delmarva argues that subjecting Mr. Richardson to suit in Delaware would not violate notions of fair play and justice.

In advancing their positions regarding jurisdiction, the parties stipulated that discovery on the issue of personal jurisdiction was unnecessary. However, both parties requested leave to submit affidavits to develop an evidentiary record on the issue. The parties also filed supplemental letter memoranda in support of their positions.[2]

---

[1] *See Jackson v. McDowell*, 1986 WL 6587, at *4 (Del. Super. May 30, 1986) (discussing defendant's direct conduct in Delaware, including meeting with two people to review direct mail material and coming to Wilmington on seven occasions to discuss campaign strategy, as "not of sufficient quality to justify the assumption of jurisdiction in this case.").

[2] In a March 22, 2019, Order, the Court notified the parties it intended to convert the motion to dismiss to one for summary judgment because the parties relied upon matters outside the pleadings. Rather than evaluating the matter as one for summary judgment, the matter is appropriately evaluated as a motion to dismiss. *See Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *3 (Del. Super. Apr. 26, 2010) (recognizing that "[c]onsideration of affidavits on a motion to dismiss for lack of personal jurisdiction is now an accepted part of this state's jurisprudence."). Considering the motion to be one for summary judgment would inappropriately shift the burden to the defendant in a matter where the plaintiff bears the burden to establish jurisdiction. This correction of the record to reflect that the Court is evaluating the matter through the lens of a Rule 12(b)(2) motion does not unfairly prejudice either party. The parties requested the Court's decision regarding personal jurisdiction to be based upon the complaint, affidavits, and contractual documents submitted.

When viewed in the light most favorable to Delmarva, the record demonstrates that Mr. Richardson called Delmarva to inquire about a building. The sales representative then travelled to Maryland and met him to discuss the potential project. By phone, Mr. Richardson then called the sales representative in Delaware and requested that she send him an architectural drawing for the building. Delmarva prepared it and emailed it to him. After several subsequent emails, Delmarva again sent a second sales representative to Maryland where the parties executed the contract. Delmarva prepared the building materials in Delaware, drove them to Maryland, and then erected the building in Maryland. While Mr. Richardson never travelled to Delaware in relation to the contract, he called and emailed Delmarva several times. He also mailed checks to Delaware for payment. According to two Delmarva sales representatives offering affidavits, Mr. Richardson emailed Delmarva nine to ten times, and called Delmarva three to four times. Thereafter, all contact between the parties during construction occurred in Maryland, and not Delaware.

## STANDARD APPLICABLE TO A RULE 12(B)(2) MOTION TO DISMISS

In Delaware, a plaintiff has no requirement to allege facts in the complaint to establish personal jurisdiction.[3] However, when personal jurisdiction is challenged in a motion to dismiss, the plaintiff bears the burden of proof to establish a basis for long-arm jurisdiction.[4] Since the plaintiff retains the evidentiary burden to prove his

---

[3] *Hart Holding Co., Inc. v. Drexel Burnham Lambert Inc*., 593 A.2d 535, 538 (Del. Ch. 1991) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 1998)).

[4] *Jackson*, 1986 WL 6587, at *1.

or her case, the plaintiff may ordinarily undertake reasonable discovery to aid such proof.[5]

A trial court has discretion to shape the procedure necessary to resolve a Rule 12(b)(2) motion to dismiss.[6] Since the central question is one of fact, a trial court may hold a preliminary hearing and determine the necessary facts, or it may decide the matter on affidavits alone.[7] The trial court also has the discretion to defer the decision until the parties complete focused discovery or full discovery.[8] Only when the facts alleged in the complaint clearly demonstrate that claimed personal jurisdiction over a defendant is frivolous, may the trial court preclude reasonable discovery in aid of establishing personal jurisdiction.[9]

To determine whether the Court has jurisdiction over a defendant, it employs a two-prong test. First, it must consider whether the Statute confers jurisdiction and authorizes service of process on the defendant.[10] Second, if the Court determines that the defendant's conduct falls within one of the enumerated categories,[11] the Court must evaluate whether the plaintiff demonstrates that subjecting the defendant to jurisdiction in Delaware does not violate the Due Process Clause of the Fourteenth Amendment.[12] Compliance with Due Process is satisfied via "the so-called minimum contacts requirement," because when a non-resident defendant has sufficient minimum contacts with Delaware, that non-resident "should reasonably anticipate being required to defend [himself or herself] in Delaware's courts."[13]

---

[5] *Hart*, 593 A.2d at 539.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1228 (Del. 2018).
[11] *Jackson*, 1986 WL 6587, at *1.
[12] *Eagle Force Holdings*, 187 A.3d at 1228.
[13] *Id.* (internal citations omitted).

**ANALYSIS**

Delmarva argues that Mr. Richardson's act of soliciting it to perform work in Maryland was sufficient to subject him to personal jurisdiction in Delaware. Delmarva argues that Mr. Richardson's actions fall within three categories in the Statute. Namely, it alleges that he "(1) [t]ransact[ed] any business. . . in the State," . . . (3) [c]ause[d] tortious injury in the State by an act or omission in this State". . . [and] (4) [c]ause[d] tortious injury in the State or outside of the State by an act or omission outside of the State [because he] solicit[ed] business. . . in the State."[14] To satisfy the Statute's requirements, only one of these qualifying actions is necessary.

As a threshold matter, Delmarva's complaint includes a breach of contract claim and an unjust enrichment claim. Accordingly, the only relevant prong of the Statute, is the one that enables suit and service of process if Mr. Richardson transacted "any business. . . in the State." Paragraph (c)(3) and (c)(4) of the Statute, described above, apply to persons causing "tortious injury." Delmarva does not raise a tort claim.

Consequently, the focus here is whether Mr. Richardson's calls and emails from Maryland to Delaware regarding a single construction project demonstrates that he "transacted any business. . . in the State."[15] The parties signed the contract in Maryland, Mr. Richardson did not travel to Delaware, and Delmarva built the pole barn in Easton, Maryland. As a consequence, there are no material facts of record other than Mr. Richardson's calls and emails that support personal jurisdiction over Mr. Richardson.

Delmarva relies primarily on two cases in support of its argument. Both have Delaware contacts greater than those present in the case at hand and are distinguishable. First, Delmarva argues that this case is similar to *Mid-Atlantic*

---

[14] 10 *Del. C.* § 3104(c).
[15] *See* 10 *Del. C.* § 3104(c)(1).

6

*Machine & Fabric v. Chesapeake Shipbuilding, Inc.*, where the Superior Court found a defendant to be subject to Delaware personal jurisdiction.[16] In that decision, the Superior Court examined whether a Connecticut defendant that solicited business from a Delaware corporation to perform work in Maryland, conferred jurisdiction on Delaware courts.[17] As is relevant in the present case, the court focused on whether the defendant's actions amounted to "transacting any business" in Delaware.[18] Similarly to the case at hand, the Connecticut defendant had no place of business in Delaware, the negotiation and execution of the contract occurred in Maryland, and all contracted-for operations were completed in Maryland.[19] Unlike the case at hand, however, (1) the Connecticut defendant's representatives personally appeared in the plaintiff's Delaware office to present its plans and specifications, and (2) the approval to commence the work also took place in the plaintiff's Delaware office.[20] Because the situs of execution of the contract was in Delaware, the Court found that it had jurisdiction over the out-of-state defendant pursuant to 10 *Del. C.* § 3104(c)(1).[21] In contrast, Mr. Richardson never appeared in Delaware and did not execute a contract in Delaware, which makes the *Mid-Atlantic* decision distinguishable.

Second, Delmarva relies on the District of Delaware case, *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.*[22] There, a Delaware corporation sued a Pennsylvania corporation for unpaid plumbing and heating supplies.[23] There, unlike the single transaction at issue in this case, the out-of-state defendant created an open

---

[16] 492 A.2d 250 (Del. Super. 1985).

[17] *Mid-Atlantic*, 492 A.2d at 252.

[18] *See* 10 *Del. C.* § 3104(c)(1); *Mid-Atlantic*, 492 A.2d at 253 ("Thus, if jurisdiction lies under § 3104, it must be pursuant to paragraph (1) of subsection (c).").

[19] *Mid-Atlantic*, 492 A.2d at 252.

[20] *Id.*

[21] *Id.* at 256.

[22] 505 F.Supp. 777 (D. Del. 1980).

[23] *Wilmington Supply*, 505 F. Supp. at 778.

running credit account and it telephonically placed more than five hundred orders for plumbing and heating supplies with the Delaware company.[24] The supplies were delivered to defendant at various construction sites in Pennsylvania, but the defendant visited Delaware on multiple occasions to either pick up or return some of the supplies to the plaintiff's location in Delaware.[25] As a result, the court found that the defendant satisfied 10 *Del C.* § 3104(c)(1)'s criteria, because it transacted business in Delaware.[26] Unlike the case at hand, placing more than five hundred orders with a Delaware company and repeated physical visits to the Delaware plaintiff's place of business constituted transacting business in Delaware.

The facts bearing upon jurisdiction in this case align more closely with two cases that Mr. Richardson cites. First, in *Fischer v. Hilton*,[27] the Delaware District Court held that it did not have personal jurisdiction over an out-of-state defendant who sold a faulty truck to a Delaware plaintiff.[28] There, a Delaware resident approached the defendant at his Ohio business and offered to buy a used truck.[29] The parties executed the contract in Ohio, and the plaintiff accepted delivery of the truck in Ohio.[30] Like in the case at hand, the Ohio defendant called the plaintiff in Delaware regarding the transaction.[31] Nevertheless, the court held that the Delaware Long-Arm Statute does not apply to a contract executed and performed substantially out of state.[32] The court further held that "[a]lthough isolated phone calls arguably may be related to the constitutional due process question, . . . *such phone calls do*

---

[24] *Id.*
[25] *Id.* at 778-79.
[26] *Id.* at 781.
[27] 549 F.Supp. 389 (D. Del. 1982).
[28] *Fischer*, 549 F.Supp. at 393.
[29] *Id.* at 390.
[30] *Id.*
[31] *Id.*
[32] *Id.* at 391.

*not constitute a transacting of business within the State of Delaware for purposes of subsection (c)(1) [of the Long-Arm Statute].*"[33]

Second, in *Blue Ball Properties, Inc. v. McClain*,[34] the District of Delaware likewise found no personal jurisdiction over an out-of-state defendant in a breach of contract action.[35]  In *Blue Ball*, the court held an evidentiary hearing to decide the issue.[36]  In doing so, it emphasized the fact-specific nature of the inquiry.  There, the sole contact that defendant had with Delaware was that he signed the contract in Delaware.[37]  The parties negotiated the contract in Maryland and performance occurred in Maryland.[38]  Here, unlike the facts relevant to the court's decision in *Blue Ball*, Mr. Richardson did not sign the contract in Delaware.  In fact, the evidence of record does not establish that he has ever visited Delaware.  The *Blue Ball* decision also supports a finding of lack of jurisdiction over Mr. Richardson.

The Court finds persuasive New York's approach to interpreting their long-arm statute's equivalent provision.  Two federal cases applying New York law examined contacts that were limited to telephone calls from outside the State of New York into the State of New York.  Those cases held that such solicitations alone were not sufficient to constitute the transaction of business.

First, the Southern District of New York in T*yco Intern. Ltd. v. Walsh*,[39] recognized that

> [g]enerally, telephone contacts between a nondomiciliary defendant and a New York party are insufficient by themselves to confer jurisdiction under [New York's equivalent provision to paragraph (c)(1) in Delaware's Statute].  A nondomiciliary defendant will be subject to jurisdiction. . ., however, if the

---

[33] *Id.* (emphasis added).
[34] 658 F.Supp. 1310 (D. Del. 1987).
[35] *Blue Ball*, 658 F.Supp. at 1312.
[36] *Id.*
[37] *Id.* at 1316.
[38] *Id.*
[39] 2003 WL 553580 (S.D.N.Y. Feb. 27, 2003).

defendant uses these telephone communications to deliberately "project" himself into business transactions occurring within the State. . . In order for these telephone contacts to sustain jurisdiction, the defendant must do more than place an order or engage in business negotiations regarding a contract whose center of gravity is outside the state. Rather, he must use the "telephone link" as a means of projecting himself into the "local commerce" of the state.[40]

In the *Tyco* case, a New Jersey defendant negotiated a deal with a New York plaintiff, through multiple telephone calls.[41] All other circumstances relevant to jurisdiction involved activity outside New York.[42] The court, in dismissing the matter for lack of jurisdiction, did not find telephone calls alone sufficient to warrant a finding that the defendant had transacted business within New York.[43]

Similarly, the Second Circuit Court of Appeals decision in *Fiedler v. First City National Bank of Houston*,[44] recognized that telephone solicitations alone regarding a single contract are insufficient to confer jurisdiction under New York's long-arm statute.[45] In that decision, the Second Circuit cited a string of New York cases recognizing that "New York courts have consistently refused to sustain §302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."[46]

In the case at hand, there is no meaningful difference between a telephone solicitation regarding an isolated contract and an email solicitation regarding one. Notwithstanding Mr. Richardson's calls and emails in this case, the center of gravity of the Maryland construction job was in Maryland. Had Mr. Richardson engaged in

---

[40] *Tyco Intern.*, 2003 WL 553580, at *4.
[41] *Id.* at *1.
[42] *Id.*
[43] *Id.* at *4.
[44] 807 F.2d 315 (2d Cir. 1986).
[45] *Fiedler*, 807 F.2d at 317-18.
[46] *Id.* at 318 (citations omitted).

10

a course of dealing with Delmarva regarding multiple contracts, or had he physically visited Delmarva's Delaware facility, the result in this case may have been different. Likewise, the result may have been different had he not signed the contract in Maryland, or had he not limited his meetings with Delmarva representatives to meeting sites in Maryland. Such circumstances, however, are not present. As a consequence, the Court does not find that Mr. Richardson transacted business in the State of Delaware. Since Delmarva is unable to demonstrate that its suit meets the first prong of the two-prong personal jurisdiction test, the Court need not address the second prong by examining whether extending personal jurisdiction would otherwise satisfy Due Process.[47]

## CONCLUSION

For the reasons discussed, Mr. Richardson's motion to dismiss for lack of personal jurisdiction must be **GRANTED**. Because the merits of Delmarva's claims have not been addressed, this dismissal is without prejudice to Delmarva's ability to refile the case in an appropriate court.

**IT IS SO ORDERED**.

/s/Jeffrey J Clark
Judge

JJC:jb
*Via File & Serve Xpress*

---

[47] *See Eagle Force Holdings*, 187 A.3d at 1228.