**SEARS, ROEBUCK & COMPANY, Plaintiff,**

v.

**SEARS plc and Sears Financial Services Limited, Defendants.**

**Civ. A. No. 88–342–JLL.**

United States District Court, D. Delaware.

July 24, 1990.

See also 744 F.Supp. 1297.

Arthur G. Connolly, Jr. of Connolly, Bove, Lodge & Hutz, Wilmington, Del. (James A. Drobile of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., and Nancy Schaefer of Schaefer, Rosenwein & Fleming, Chicago, Ill., of counsel), for plaintiff.

Jesse A. Finkelstein of Richards, Layton & Finger, Wilmington, Del. (Shelby R. Grubbs of Grant, Konvalinka & Grubbs, P.C., Chattanooga, Tenn., of counsel), for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. BACKGROUND

Sears, Roebuck and Company ("Roebuck") filed a trademark and trade name infringement suit on June 28, 1988, against Sears plc ("PLC"). *See* Docket Item

("D.I.") 1. On March 10, 1989, Roebuck amended its complaint to add Sears Financial Services Limited ("SFSL") as a defendant. Discovery closed on December 15, 1989. Currently before the Court are SFSL's motion to dismiss for lack of personal jurisdiction, D.I. 206, and for summary judgment. D.I. 224.[1] Because the Court finds that it lacks personal jurisdiction over SFSL, this Opinion addresses only those arguments pertaining to SFSL's motion to dismiss.[2]

## II. FACTS

Defendant SFSL is a wholly owned subsidiary of PLC. Both companies are incorporated under the laws of England and Wales. SFSL markets and issues a consumer credit card in the United Kingdom to persons with an address in the United Kingdom. The name "Sears" appears on the SFSL credit card. Two individuals moved to Delaware from the United Kingdom with outstanding charges on their SFSL accounts. These two individuals received billing statements using the name "Sears" from SFSL while they resided in Delaware. When one of these individual's accounts became delinquent, SFSL retained a Delaware attorney to collect the debt. The delinquent cardholder maintains that when he was contacted by the attorney, the attorney represented that he had been hired by "Sears." See D.I. 239A at 11–12. SFSL has had no contact with the Delaware cardholders since 1986. Additionally, prior to 1987, some promotional material may have been sent to these two cardholders. See D.I. 223 at 7 n. 3.

SFSL advertises its "Sears Card" in Selfridges magazine, a British magazine. This magazine has been available in Delaware, at least at one newsstand, since 1986. See D.I. 239A at A25. Once in 1985 and once in 1986, Selfridges magazines containing advertisements for SFSL's "Sears Card" may have been available for purchase in the United States. See D.I. 223 at 8 n. 4. However, there is no evidence in the record that a Selfridges magazine with such an advertisement was actually sold in Delaware. SFSL also advertises its "Sears Card" in Women and Home, a British magazine available in the United States. One reader thought that an SFSL advertisement referred to Roebuck, see D.I. 239A at 30–31, although Roebuck does not contend that this reader is a resident of Delaware, or bought the magazine in Delaware.

## III. DISCUSSION

Determining whether a court has personal jurisdiction over a defendant is a two-step process. First, pursuant to Federal Rule of Civil Procedure 4(e), the court must ascertain whether the defendant falls within the long-arm statute of the forum state.[3] If the court finds that the state statute permits the exercise of personal jurisdiction, the court must then analyze the circumstances to ensure that asserting jurisdiction comports with due process. See *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *United States v. Consolidated Rail Corp. ("Conrail")*, 674 F.Supp. 138, 142 (D.Del.1987); *Blue Ball Properties, Inc. v. McClain*, 658 F.Supp. 1310, 1315 (D.Del. 1987); *Dentsply International, Inc. v. Pentron Corp.*, 648 F.Supp. 856, 858 (D.Del.1986); *Afros S.P.A. v. Krauss-Maf-*

1. PLC's motion to dismiss for lack of personal jurisdiction, D.I. 204, and for summary judgment, D.I. 222, and Roebuck's motion for partial summary judgment, D.I. 220, will be addressed in a separate opinion.

2. Service of process on SFSL was made pursuant to the requirements of the Hague Convention. See D.I. 253 at 2 n. 2.

3. Because the jurisdictional analysis is limited to SFSL's contacts with the State of Delaware, the Court will consider only those facts pertaining to those contacts. Thus, the fact that SFSL may have other contacts with other places within the United States is of no consequence to the present analysis. See *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 291 (3d Cir.1985) ("in personam jurisdiction may not rest upon an alien's aggregate national contacts"). In this regard, the facts that (a) SFSL may have 812 cardholders who are United States residents; (b) that SFSL may have negotiated with Hertz outside of Delaware; and (c) that promotional materials were sent to other states, are of no import to the present inquiry.

*fei Corp.*, 624 F.Supp. 464, 466 (D.Del. 1985); *Moore v. Little Grant Indus., Inc.*, 513 F.Supp. 1043, 1046 (D.Del.1981), *aff'd*, 681 F.2d 807 (3d Cir.1982); *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del.1986); *Waters v. Deutz Corp.*, 479 A.2d 273, 274 (Del.1984). The burden of establishing jurisdiction under the Delaware long-arm statute is on the plaintiff. *See Greenly v. Davis*, 486 A.2d 669, 670 (Del.1984).

### A. The Delaware Long–Arm Statute

Roebuck contends that this Court may exercise personal jurisdiction over SFSL under either of two subsections of the Delaware Long–Arm Statute, *10 Del.C. § 3104(c)(1)* or *10 Del.C. § 3104(c)(3)*. Subsection (c)(1) permits the exercise of personal jurisdiction over a nonresident if that nonresident "[t]ransacts any business or performs any character of work or service in the state." A nonresident is subject to personal jurisdiction under subsection (c)(3) if the nonresident "[c]auses tortious injury in the State by an act or omission in this State."[4] The Delaware Supreme Court has interpreted both subsection (c)(1) and (c)(3) as conferring specific jurisdiction only, *see LaNuova*, 513 A.2d at 768; *see also United States v. Conrail*, 674 F.Supp. at 144, meaning that the cause of action must arise out of the defendant's alleged contacts with the forum. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984).

1. Section 3104(c)(1)

■ This Court, in *Blue Ball Properties v. McClain*, 658 F.Supp. 1310 (D.Del.1987), adduced a number of factors that could support the finding that a defendant had transacted business in Delaware. The Court looked to whether the defendant ini-

tiated the transaction in question by seeking out a Delaware resident, whether the contract required performance in Delaware, and the place the contract was accepted. *See id.* at 1316. In consideration of these factors, SFSL did not initiate the transaction by seeking out a Delaware resident. The two cardholders in question acquired their cards, and incurred the whole of their debt, in the United Kingdom. Similarly, the contract was entered into in the United Kingdom and did not *require* performance in Delaware.

A recent Illinois decision supports the conclusion that SFSL did not "transact" business in Delaware, within the meaning of the Delaware Long–Arm Statute.[5] *Konicki v. Wirta*, 169 Ill.App.3d 21, 119 Ill.Dec. 692, 523 N.E.2d 160, *appeal denied*, 122 Ill.2d 576, 125 Ill.Dec. 219, 530 N.E.2d 247 (1988), concerned a note for $10,875 secured by a condominium in California. Initial negotiations concerning the note took place in California. The lender then moved to Illinois, and the parties subsequently agreed upon the note's terms. The borrower signed the note in California and sent it to the lender in Illinois. The borrower made payments on the note to the lender, who still resided in Illinois. The borrower then defaulted on the note. The holder of the note sued the borrower in Illinois, but the Illinois court refused to exercise personal jurisdiction over the borrower because the borrower had not transacted business in Illinois.

The Illinois court held that in order to transact business in Illinois, a party must "avail himself of the benefits of Illinois law." *Id.* 119 Ill.Dec. at 696, 523 N.E.2d at 164. In making that determination, the court used the same factors employed in *Blue Ball Properties, supra.* The court noted that "the fact that the note provided

---

4. Roebuck does not contend that jurisdiction exists under 10 Del.C. § 3104(c)(4). *See* D.I. 239 at 12 n. 3. Subsection (c)(4) permits a court to exercise personal jurisdiction over a nonresident defendant if the defendant causes tortious injury by an act or omission outside of the state and if that defendant regularly does business or "engages in any other persistent course of conduct in the State. . . ."

5. Delaware courts look to interpretations of the Illinois Long–Arm Statute as persuasive authority because the Delaware statute was modeled on the Illinois law. *See Blue Ball Properties*, 658 F.Supp. at 1316 (citing cases); *Plummer & Co. Realtors v. Crisafi*, 533 A.2d 1242, 1246 (Del.Super.1987) (citing cases).

for payment 'at any place designated' by the holder of the note is not an indication that defendants engaged in commercial activity in [the forum], as the holder of the note could have demanded payment wherever he resided...." The court concluded that

The facts here are insufficient to demonstrate that defendants voluntarily sought the benefits and protections of the laws of this State. Rather, it appears from the record that defendants would fully expect that, as the negotiations for the note began in California, the note was executed by them in California, and the note was interrelated to the California condominium property, the laws of California would apply. We conclude that defendants' contacts with the State of Illinois are insufficient to support jurisdiction under the long-arm statute.

*Id.*

This Court finds that SFSL is in substantially the same position as the borrower in *Konicki.* The credit terms were set in the United Kingdom, the credit cards were issued in the United Kingdom, all of the debt was incurred in the United Kingdom, and the laws of the United Kingdom would apply to any action between the credit card holders and SFSL. Similarly, the credit card holders would have to have paid their debts regardless of where they resided. The mere fact that the two credit card holders chose to move to Delaware, from the United Kingdom where they acquired their credit cards, does not confer personal jurisdiction over SFSL under the Delaware Long–Arm Statute. Indeed, the case against SFSL is weaker than against the borrower in *Konicki* because no part of the contract was signed or accepted in Delaware.

The fact that SFSL hired an attorney to collect the debt of one of these two cardholders does not change the calculus. Although SFSL was not obligated to hire an attorney to attempt to collect the debt owed, SFSL's action was not the conduct

"accommodating the buyer" the Third Circuit found to establish sufficient contacts in *Mesalic v. Fiber Float Corp.,* 897 F.2d 696, 700 (3d Cir.1990). Nor was this "voluntary participation in the continuation" of the relationship that formed the basis of minimum contacts in *North Penn Gas Co. v. Corning Natural Gas Co.,* 897 F.2d 687, 691 (3d Cir.1990), *petition for cert. filed* (June 29, 1990). SFSL's contact with Delaware did not "proximately result from actions by the defendant *himself." North Penn Gas Co. v. Corning Natural Gas Co.,* 897 F.2d 687, 690 (3d Cir.1990) (quoting *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)) (emphasis in original). SFSL's contact with Delaware proximately resulted from the unilateral actions of the cardholder in moving to Delaware and permitting his account to become delinquent while residing in Delaware.

■ Similarly, advertising in international magazines, such as Selfridges and Women and Home, does not qualify as transacting business in Delaware. SFSL did not seek out Delaware residents by placing the advertisements. Neither magazine was required to distribute in Delaware. Finally, the advertising contract was entered into in the United Kingdom. *See Blue Ball Properties* at 1316; *Konicki* at 164. Roebuck has offered no support, statutory or otherwise, that advertising in widely distributed periodicals confers personal jurisdiction over a defendant.[6]

■ The mailing of promotional materials to cardholders in Delaware presents a closer question under the transacting of business standard. Promotional materials sent to Delaware residents are intended to "seek out" those residents. However, vague assertions that promotional materials may have been sent to Delaware, without any documentation of the number of such mailings, what they promoted, wheth-

---

**6.** This is not to say that such advertising can never confer personal jurisdiction, but in order to do so it must rise to the level of a "persistent course of conduct." 10 Del.C. § 3104(c)(4). Roebuck does not allege that jurisdiction exists under subsection (c)(4), *see supra* note 4, and, in any event, the few advertisements proffered by Roebuck are insufficient to establish jurisdiction under that subsection.

er they actually reached Delaware, or whether the word "Sears" was actually used, are given little weight in the personal jurisdiction analysis. *See Greenly v. Davis*, 486 A.2d 669, 670 (Del.1984) ("we find no error in what the trial court did.... [H]e gave little weight to vague, general assertions contained in plaintiff's counter-affidavits.... This was appropriate in view of the wording of the affidavits."). Without any "specific showing" that these mailings are germane, this Court cannot place much weight on them. *Id.*

Even if the Court took Roebuck's assertion at face value, the promotional material would be insufficient to confer jurisdiction over SFSL. As this Court held in *Fischer v. Hilton*, 549 F.Supp. 389, 391 (D.Del. 1982), subsection (c)(1) requires some act of the defendant within the state. In *Fischer*, phone calls to a Delaware resident in Delaware concerning financial arrangements under a contract were insufficient to establish personal jurisdiction. *See id.* Likewise, in *Moore v. Little Great Indus., Inc.*, 513 F.Supp. 1043, 1046 (D.Del.1981), *aff'd*, 681 F.2d 807 (3d Cir.1982), this Court ruled that the mere shipment of goods into Delaware did not constitute transacting business within the meaning of subsection (c)(1). The mere mailing of an unknown number of promotional materials to two individuals in Delaware, whose only connection to SFSL arose in the United Kingdom, does not rise to even the level of business activity rejected by *Fischer* and *Moore*. Accordingly, personal jurisdiction does not exist over SFSL under subsection (c)(1).

### 2. Section 3104(c)(3)

■ Subsection (c)(3) permits the exercise of personal jurisdiction over a nonresident defendant if the defendant causes tortious injury in Delaware *by an act* or omission *in Delaware*. Without any support for the proposition, Roebuck claims that "[t]he mailing of statements and promotional materials from the United Kingdom constitutes an act in Delaware." D.I.

239 at 14. The Court does not accept this proposition. The "act" of mailing, for purposes of subsection (c)(3), is complete when the material is mailed. Any other interpretation of the statute would mean that anytime tortious injury was felt in Delaware, the alleged tortfeasor could be deemed to have committed an "act" in Delaware. Roebuck's construction of the statute would "eviscerate the distinction between subsections (c)(3) and (c)(4)...." *Moore*, 513 F.Supp. at 1046; *see also supra* note 3 (text of subsection (c)(4)). Simply put, in order for a defendant to commit an act in Delaware and be subject to subsection (c)(3), the defendant, or an agent of the defendant, must be present in Delaware when the deed is done. *See Uresil Corp. v. Cook Group Inc.*, 1988 WL 124335 at 2 (N.D.Ill.1988). There was no such presence with regard to the mailing of the billing statements, the mailing of the promotional material, or the placement of the advertisements. *See Hertz System, Inc. v. Hervis Corp.*, 549 F.Supp. 796, 797 (S.D.N.Y.1982) (holding that placing an advertisement in a newspaper in one state does not constitute committing a tortious act in another state).

■ When SFSL retained an attorney to assist in debt collection from one cardholder in Delaware, however, the attorney was an agent of SFSL, in Delaware, and capable of committing a tortious act in the state. The question, therefore, is whether an attorney commits a tort by using the name "Sears" while collecting a debt incurred in the United Kingdom and owed to "Sears Financial Services Limited." Neither the parties nor the Court have found a case on point.

Roebuck has alleged that SFSL has violated 15 U.S.C. § 1125(a), *see* D.I. 44 at 43, and 15 U.S.C. § 1114(1). *See id.* at 44.[7] Section 1114(1) prohibits the use of a registered mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" without the permission of the owner of the mark. On

---

**7.** Roebuck has also claimed that SFSL has violated the statutes, common law, or both of the following states: California, New York, Oregon, Florida, and New Hampshire. *See* D.I. 44 at 45–52. These other allegations are not relied on in Roebuck's jurisdictional arguments.

its face, Section 1114(1) does not apply to the relationship between a debtor and debt collector. The debt collector does not sell, offer to sell, distribute, or advertise anything to the debtor. Roebuck, therefore, cannot base the tortious injury required under 10 Del.C. § 3104(c)(3) on SFSL's alleged violation of 15 U.S.C. § 1114(1).

15 U.S.C. § 1125(a) addresses "[a]ny person who, on or in connection with any goods or services ... uses in commerce any word, term, [or] name ... which (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person ... as to the origin, sponsorship or approval of his or her goods, services or commercial activities." As Roebuck correctly noted, "the key concept in determining trademark infringement is 'likelihood of confusion' relating to the origin or source of competing or related goods or services." D.I. 245 at 21. Thus, in order to determine whether Roebuck has alleged a tort under Section 1125(a), the Court must evaluate the likelihood of confusion when the one delinquent cardholder was approached by SFSL's debt collector.

The only evidence on this point is the affidavit of the cardholder. In pertinent part, he states:

2. In 1983 or 1984, while a resident of Great Britain, I obtained a Selfridges credit card at a store in Oxford, England called "Selfridges". The background of the card was green. The word "Selfridges" appeared on the card in large letters. The lettering was gold or white.

3. I received approximately 4–5 monthly statements from Sears at my Dover residence after moving to Delaware.

4. Approximately 8–9 months after I moved to Delaware, I received a telephone call from ... a Dover Attorney hired by Sears to collect the balance due on my account. [He] told me that I would be sued by Sears if I did not pay

the balance immediately. [His] office called me on the telephone a number of times. [He] requested that I come to his office and pay the balance due either by check or in cash. Pursuant to [his] request, I went to his office in Dover and paid the balance due on my account. After paying the balance, I received no further statements from Sears.

D.I. 239A at 11–12. There is nothing in this statement from which the Court may infer that this individual was even remotely confused as to who employed the debt collector. The cardholder obtained the credit card in the United Kingdom, had a relationship of many years with SFSL, and received four to five statements from the United Kingdom. Presumably, the cardholder was also cognizant of the fact that he had failed to make the payments required to keep his account up to date. Finally, there is no allegation that the cardholder ever dealt with Roebuck, or even knew of Roebuck's existence. If the cardholder never had any relationship with Roebuck, then there is no basis to conclude that there was any likelihood of confusion whatsoever.[8] Because there was no likelihood of confusion in the activities of the debt collector, Roebuck has failed to allege tortious injury under 10 Del.C. § 3104(c)(3).

B. *Constitutional Analysis*

■ Assuming *arguendo* that § 3104 applies (contrary to the Court's findings), assertion of personal jurisdiction over SFSL would not comport with the requirements of due process. Due Process requires the court to determine whether the defendant has sufficient minimum contacts to the forum. *See Burger King Corp. v. Rudzwicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Wash-*

---

8. Roebuck's argument must also be rejected because of the subtle twist it would add to debtor-creditor relations. A debtor could enjoy complete debt forgiveness just by moving to a jurisdiction where the creditor may be found to infringe a trademark. Under Roebuck's theory, the creditor in that case could not pursue its debt without opening itself up to a trademark infringement suit.

*ington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

As noted above, both subsections relied upon by Roebuck, if applicable, would confer specific jurisdiction over SFSL. When a plaintiff urges the exercise of specific jurisdiction "a relationship among the defendant, the forum and the litigation is the essential foundation" of the analysis. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1873 & n. 8, 80 L.Ed.2d 404 (1984); *accord Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *Shaffer v. Heitner,* 433 U.S. 186, 203, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The key to whether the relationship supports exerting jurisdiction is whether the defendant has purposefully directed his activities towards the forum. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182.

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or attenuated contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state.

*Id.* at 476, 105 S.Ct. at 2184.

It is clear that SFSL's contacts with Delaware, that arose out of the two cardholders who moved here from the United Kingdom, do not constitute "purposeful availment" of this forum. SFSL did not undertake any action *by itself* that created any, much less a substantial, connection with Delaware. The two cardholders' move to Delaware was purely "random" and "fortuitous," and constitutes unilateral activity on the part of individuals wholly unrelated to the dispute between Roebuck and SFSL that is insufficient to establish minimum

contacts among SFSL, the forum, and this trademark litigation. Indeed, after *Burger King,* it is not clear that the cardholders themselves could hale SFSL into a Delaware court.[9] That Roebuck's claim is grounded in intellectual property and tort does not alter the analysis.

> Although personal jurisdiction might well be justified on the ground that only then could the substantive policies of the patent laws be given effect, we believe an inquiry into the affiliating circumstances ... is nonetheless necessary. Otherwise a plaintiff's unilateral activity might suffice to establish personal jurisdiction over an alien defendant.

*Max Daetwyler Corp.,* 762 F.2d at 295. In this case, the fact that SFSL had to pursue its debtors from the United Kingdom to Delaware is simply insufficient to establish that SFSL has purposefully availed itself of this forum and thus create the minimum contacts necessary to sustain Roebuck's action.

The Supreme Court's decision in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957), is controlling. In *Hanson,* the Court reversed a decision of the Supreme Court of Florida because, in part, the Florida court did not have personal jurisdiction over a trust company located in Delaware.

> The agreement was executed in Delaware by a trust company incorporated in that state and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State. From Florida Mrs. Donner carried on several bits of trust administration that may be compared to the mailing of premiums in *McGee.* But the record discloses no instance in which the *trustee* performed any acts in Florida that bear the same relationship to the agreement as the so-

---

**9.** The *Burger King* court held that an individual's contract with an out-of-state party does not automatically establish sufficient minimum contacts with the forum. "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract

and the parties' actual course of dealing—that must be evaluated in determining whether a defendant purposefully established minimum contacts with the forum." *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185.

licitation in *McGee* [*v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1958) ].

*Hanson*, 357 U.S. at 252, 78 S.Ct. at 1239. Similarly, the agreement between SFSL and its cardholders was executed in the United Kingdom. The cardholders derived most of the benefit of that agreement while they resided in the United Kingdom. It was not until later, when the cardholders became domiciled in Delaware, that SFSL had its first contact with Delaware by sending billing statements to the two cardholders. As in *Hanson*, "the record discloses no instance in which" SFSL performed any acts in Delaware "that bear the same relationship as the solicitation in *McGee*." *Id.*[10] The fundamental fact, in this regard, is that it was the unilateral activity of the cardholders, in their change of residence and in the one default, that established any contact between SFSL and Delaware. This unilateral activity does not confer personal jurisdiction over SFSL. *Cf. World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980) ("a creditor's amenability to quasi in rem action [does not automatically] travel[ ] with his debtor").

Finally, SFSL's advertisements in Selfridges and Women and Home do not amount to the minimum contacts necessary to establish personal jurisdiction under the due process clause. The Third Circuit has held that in order for advertising to establish sufficient contacts with the forum state it must be "a sustained promotional campaign, directed to the residents of [the forum]. . . ." *Max Daetwyler Corp.*, 762 F.2d at 300; *accord Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 43 (8th Cir. 1988); *Ameritec Corp. v. Ameritech Corp.*, No. CV 86–0951 (C.D.Calif. Apr. 29, 1986) (1986 WL 10702 at 6); *Williams v. Canon*, 432 F.Supp. 376, 380 (C.D.Calif. 1977). There is no evidence in the record that a magazine containing a potentially trademark-infringing advertisement was ever sold in Delaware, much less that SFSL "sustained a promotional campaign" in this

State. Accordingly, the advertisements in Women and Home and Selfridges do not establish minimum contacts among SFSL, Delaware, and Roebuck's complaint.

An order will be entered dismissing SFSL from this action for lack of personal jurisdiction over it.

10. *McGee* approved the exercise of personal jurisdiction over a nonresident who solicited an agreement with a California resident. The offer was accepted in California, and payments under the contract were *mailed from* California.