COMPAQ COMPUTER CORP., Plaintiff,

v.

PACKARD BELL ELECTRONICS, INC., Defendant.

PACKARD BELL ELECTRONICS, INC., Plaintiff,

v.

COMPAQ COMPUTER CORP. and Ross Cooley, Defendants.

Civil Action Nos. 95–222–RRM, 95–607–RRM.

United States District Court, D. Delaware.

Feb. 2, 1996.

---

340

William H. Sudell, Jr., and Karen L. Pascale, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Benjamin R. Civiletti, and William D. Coston, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, for plaintiff and counterclaim defendants.

David C. McBride, Josy W. Ingersoll, Matthew P. Denn, and James P. Hughes, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, DE, Marshall B. Grossman, and Michael A. Sherman, Alschuler, Grossman & Pines, Los Angeles, CA, Thomas J. McDermott, Jr., Manatt, Phelps & Phillips, Los Angeles, CA, for defendant and counterclaim plaintiff.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is an unfair competition case. Plaintiff and counterclaim defendant Compaq Computer Corporation is a Delaware corporation with its principal place of business in Houston, Texas. Counterclaim defendant Ross Cooley is Compaq's Senior Vice President for North America. Defendant and counterclaim plaintiff Packard Bell Electronics, Inc. is a Delaware corporation with its principal place of business in Westlake Village, California. Both Compaq and Packard Bell manufacture and distribute personal computers ("PC's") to businesses and to the general public through computer resellers and dealers, mass merchant retailers, electronics and office superstores, and direct and mail order catalogues.

On April 10, 1995, Compaq brought suit against Packard Bell, alleging that Packard Bell has engaged in false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), unfair and deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del.C. § 2531 *et seq.*, and unfair competition in violation of Delaware common law. On October 10, 1995, Packard Bell brought a countersuit against Compaq and Ross Cooley, alleging that Compaq has engaged in false advertising in violation of § 43(a) of the Lanham Act and unfair competition in violation of §§ 17200 and 17500 of the California Business & Professions Code, and that Compaq and Cooley made defamatory statements against Packard Bell. On November 13, 1995, the court issued an order consolidating Compaq's and Packard Bell's lawsuits. On that same date, Packard Bell filed its First Amended Answer and Counterclaims in response to Compaq's complaint.

On November 20, 1995, Cooley filed a motion to dismiss Packard Bell's defamation claim against him for lack of personal jurisdiction. On December 13, 1995, Packard Bell filed a Second Amended Answer and Counterclaims. On January 19, 1996, the court held an oral argument on Cooley's motion. This is the court's decision on Cooley's motion.

## I. *FACTUAL BACKGROUND*

The parties have fully briefed and argued Cooley's motion to dismiss for lack of personal jurisdiction. In addition, the parties have fully briefed a motion by Compaq to dismiss Packard Bell's complaint and counterclaims for failure to state a claim upon which the court can grant relief. The court draws the following facts from these briefs and arguments and from the complaints filed by both parties.

### A. *The Facts Underlying Compaq's and Packard Bell's Lawsuits*

This lawsuit concerns the return and resale practices of PC manufacturers. Con-

sumers return PC's for a number of reasons, such as dissatisfaction with the product, perceived defects of the product, or what is known as "buyer's remorse." Because the return rate in the PC industry is high, and because many returns involve computers that are unopened, unused, or used without permanent damage, some, if not all, PC manufacturers "recycle" parts from these returned computers into computers sold as new. Manufacturers that recycle parts from returned computers develop tests that they use to distinguish parts that are "new" from those that are not.

In its complaint, Compaq alleges that Packard Bell engages in this form of recycling—that Packard Bell disassembles returned products for their component parts and then uses these components to manufacture products ultimately sold as new. However, Compaq alleges that Packard Bell makes no effort to distinguish parts that are new from parts that are used. To the contrary, Compaq alleges that Packard Bell employees remove serial numbers and date codes to hide manufacturing dates and/or prior use, and that these employees sometimes use Erasable Programmable Read Only Memory ("EPROM") chips to camouflage a given computer's true age. Thus, Compaq alleges that Packard Bell, through advertising and promotional materials, misrepresents its computers as new when, in fact, certain of Packard Bell's products contain used parts.

Sometime after filing its lawsuit, Compaq, through its attorneys, mailed a letter to 10 State Attorneys General (the "AG Letters"). The AG Letters essentially repeat the allegations of Compaq's complaint against Packard Bell, summarize relevant state law on unfair and deceptive trade practices, and relate a portion of Compaq's pre-filing investigation into Packard Bell's return practices. The AG Letters also describe and distinguish Compaq's policies and procedures from those of other PC manufacturers. Compaq's attorneys attached to the AG Letters sworn affidavits from three former Packard Bell employees in support of Compaq's allegations. Apparently, the AG Letters have resulted in a number of state investigations into the return practices of PC manufacturers, particularly those of Packard Bell.

On June 22, 1995, Cooley made a number of statements about Packard Bell (the "Cooley Statements") to reporters at the "PC Expo," which appears to be a trade show for the PC industry held in New York City. The Associated Press reported the Cooley Statements:

> "We've studied every single thing problematic to [Packard Bell president Beny Alagem's business] model," Cooley said. Lawsuits have an adverse impact because Packard Bell's profit margin is slim, he added. "He has to raise prices."
>
> Cooley also said Alagem has been unable to take Packard Bell public because investors fear that if Alagem and senior executives were to cash out, the company would be left with nothing but "some Mexican factories and four Chinese engineers."

This Associated Press report containing the Cooley Statements subsequently appeared in newspapers across the nation, including Delaware.

Packard Bell admits that it recycles parts from returned computers, but it asserts that it disassembles and tests every component from each returned computer to ensure that every such component is new or equivalent. In its countersuit, Packard Bell alleges that Compaq falsely advertises its own return practices and falsely compares its own practices to those of Packard Bell. In addition, Packard Bell alleges that Compaq falsely indicates that its portable ("laptop" or "notebook") PC's are manufactured in the United States when some of those laptop PC's are actually manufactured in Singapore. Finally, Packard Bell alleges that Compaq and Cooley have made defamatory statements about Packard Bell's products and its workforce. Packard Bell's defamation claim against Cooley is based on the Cooley Statements and the AG Letters, which Packard Bell alleges that Cooley "ratified" and "probably authorized."

### B. *Cooley's Contacts to Delaware*

According to Cooley's brief and his affidavit, which is attached to his motion to dismiss, he has few tangible contacts to Dela-

ware. He is a domiciliary of Texas and has lived there for 11 years. He owns no property in Delaware, and he has not solicited business within the state. Cooley has been present physically in Delaware only twice. He attended a "sales event" at a Computerland retail store in Wilmington, Delaware, over five years ago. In addition, he stayed at the Hotel DuPont in Wilmington on June 9, 1995, after attending a charity event at Longwood Gardens in Kennett Square, Pennsylvania. One of Compaq's customers, Intelligent Electronics ("IE"), sponsored the charity event, and Compaq reimbursed Cooley for some of his expenses from the trip. IE is located in Exton, Pennsylvania.

In its answering brief, Packard Bell argues that Cooley has many additional contacts of a more intangible nature. Packard Bell alleges that Cooley directed his allegedly defamatory statements at the "PC Expo" toward Packard Bell, which is incorporated in Delaware. Packard Bell argues that Cooley has responsibility for operations and sales within Delaware as Vice President for North America because he "has responsibility for, and jurisdiction over, Compaq's sales activities" in Delaware. Packard Bell also argues that Cooley's trip to Longwood Gardens partly was to solicit business because some of Cooley's expenses were reimbursed by Compaq and because IE sponsored the charity event. Packard Bell further alleges that IE's chairman "certainly" introduced Cooley to IE business associates. Packard Bell alleges that Cooley "ratified" and "probably authorized" the AG Letter that Compaq's counsel mailed to the Delaware State Attorney General's office. Finally, Packard Bell alleges that Cooley receives a "material" amount of his income under Compaq's 1989 and 1995 "Equity Incentive Plans," which are governed by Delaware law.

## II. *DISCUSSION*

█ In determining whether to exercise personal jurisdiction over Cooley, the court must engage in a two-step analysis. First, the court must examine whether the Delaware long-arm statute, 10 Del.C. § 3104, authorizes the exercise of jurisdiction over Cooley. *Jeffreys v. Exten,* 784 F.Supp. 146, 150

(D.Del.1992); Federal Rule of Civil Procedure 4(e). If the long-arm statute authorizes exercising jurisdiction, then the court must decide whether exercising jurisdiction comports with the requirements of the Due Process Clause. *Id.*

█ Packard Bell has the burden of making a *prima facie* demonstration that Delaware's long-arm statute allows the court to exercise jurisdiction over Cooley. *Id.* at 151. The court must presume that Packard Bell's allegations of jurisdictional fact are true, and it must resolve all factual disputes in Packard Bell's favor. *Id.*

### A. *Does the Delaware Long–Arm Statute Authorize Exercising Personal Jurisdiction over Cooley?*

Packard Bell argues that §§ 3104(c)(3) and (c)(4) of the Delaware long-arm statute authorize this court to exercise personal jurisdiction over Cooley. Those provisions state:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

. . . .

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Cause tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

. . . .

10 Del.C. § 3104(c)(3), (4). Compaq argues that neither of these provisions support the exercise of jurisdiction over Cooley.

### 1. *Does § 3104(c)(3) authorize exercising jurisdiction over Cooley?*

█ Packard Bell argues that Cooley caused "tortious injury" in Delaware by an act "in Delaware" in two ways. First, Packard Bell argues that he "ratified" and "probably authorized" the mailing of the allegedly defamatory AG Letter to the Delaware At-

torney General's office. Second, Packard Bell argues that Cooley made his allegedly defamatory remarks at the "PC Expo" in New York "with the knowledge and intent that they be republished in the PC industry and in the general media including, without limitation, in [Delaware]."

Compaq argues that Cooley has not committed an act in Delaware. Compaq argues that Cooley made his allegedly defamatory remarks in New York and did not republish them in Delaware. In addition Compaq argues that Cooley did not authorize the AG Letters and had never seen them before the initiation of this lawsuit. Finally, Compaq argues that even if Cooley did ratify and authorize the AG Letter mailed to Delaware, those acts of ratification and authorization did not occur in Delaware.

■ Cooley did not commit an act "in Delaware" for the purpose of § 3104(c)(3). "In order for a defendant to commit an act in Delaware and be subject to subsection (c)(3) [of the Delaware long-arm statute], the defendant, or an agent of the defendant, must be present in Delaware when the deed is done." *Sears, Roebuck & Company v. Sears,* 744 F.Supp. 1289, 1294 (D.Del.1990). In *Sears,* this court held that mailing promotional materials into Delaware from outside the state does not constitute an act "in Delaware" for the purpose of § 3104(c)(3). *Id.* Cooley was not present in Delaware when he allegedly ratified and authorized the mailing of the AG Letter, and he was in New York when he made his allegedly defamatory statements. Thus, Cooley was not "in Delaware" when he committed any of the allegedly tortious acts such that this court can exercise jurisdiction over him under § 3104(c)(3).

The fact that the Delaware news media republished the Cooley Statements in Delaware does not alter this conclusion. In *Ramada Inns, Inc. v. Drinkhall,* C.A. No. 83C–AU–56, 1984 WL 247023 (Del.Super.Ct. May 17, 1984), the plaintiffs sued two writers and the company that publishes the Wall Street Journal (the "Journal") for two allegedly libelous stories that appeared in the Journal. The court held that because the individual defendants wrote the articles outside of Delaware, and the publishing company edited, published, and distributed the paper, the individual defendants had not committed any act "in Delaware."· *Id.* at *3–5. The court cited cases from courts in other jurisdictions with long-arm jurisdiction provisions identical to § 3104(c)(3) in which those courts declined to exercise jurisdiction when the allegedly defamatory statement was not made in the forum state. *Id.* In addition, the court stated that allowing the exercise of jurisdiction over a defendant merely because he caused tortious injury in Delaware would eviscerate the difference between § 3104(c)(3) and § 3104(c)(4), which does not require an act in Delaware. *Id.* (citing *Moore v. Little Giant Industries,* 513 F.Supp. 1043 (D.Del.1981), *aff'd,* 681 F.2d 807 (3d Cir.1982)). Therefore, § 3104(c)(3) does not allow this court to exercise jurisdiction over Cooley.

2. *Does § 3104(c)(4) authorize exercising jurisdiction over Cooley?*

A Delaware court may exercise "general" jurisdiction over a defendant if he causes "tortious injury" by an act outside of Delaware "if he regularly does or solicits business, engages in any other persistent course of conduct in [Delaware] or derives substantial revenue from services, or things used or consumed in [Delaware]." 10 Del.C. § 3104(c)(4). The Cooley Statements can support a cause of action for defamation, and Packard Bell is incorporated in Delaware. Thus, Cooley may have caused tortious injury to Packard Bell in Delaware. However, Cooley does not have sufficient contacts with Delaware to support the exercise of general jurisdiction under § 3104(c)(4).

■ Packard Bell argues that because Cooley is Compaq's Vice President for North America, with "responsibility for and jurisdiction over" sales activities in Delaware, Cooley "regularly does or solicits business" within Delaware and engages in a "persistent course of conduct" within Delaware. In addition, Packard Bell asserts that Cooley's two visits to Delaware were specific instances of Cooley soliciting business in Delaware. Finally, Packard Bell argues that Cooley specifically aimed his allegedly defamatory statements at Delaware in order to harm a

Delaware resident. Therefore, the requirements of § 3104(c)(4) are satisfied and the court can exercise jurisdiction over Cooley.

In support of its argument, Packard Bell cites *Carsello v. Clowser,* C.A. No. 85–357 CMW, 1986 WL 10741 (D.Del. Sept. 29, 1986). In *Carsello,* the plaintiff, who was employed at the Wilmington, Delaware Post of Duty of the Bureau of Alcohol, Firearms, and Tobacco of the United States Department of Treasury, sued his immediate supervisor in Wilmington, William Clowser, Clowser's immediate supervisor in Washington, D.C., Michael Bregman, and certain other federal government employees. The plaintiff alleged that Bregman failed to act on his grievance against Clowser, thereby allowing Clowser to continue to harass the plaintiff. Bregman filed a motion to dismiss the claims against him for lack of personal jurisdiction. The court held that the plaintiff had satisfied his *prima facie* showing under § 3104(c)(4). In making this determination, the court stated:

> Bregman's omissions allegedly caused the harm [the plaintiff] suffered. As the supervisor for Delaware, Bregman was involved in a persistent course of conduct in the State, even if, as alleged, he has only been in the State once since January 1984.

*Id.* at *1.

*Carsello* is distinguishable from the present case. In *Carsello,* Bregman was the plaintiff's immediate superior after Clowser and had specific responsibility for ensuring that the plaintiff was free from harassment by Clowser. In addition, Bregman knew that his failure to prevent such harassment would cause harm to the plaintiff who lived and worked in Delaware. By contrast, Cooley merely has general supervisory authority over the sales activities of the entire continent by virtue of being Compaq's Vice President for North America. Furthermore, the majority of the harm, if any, that Packard Bell might have suffered as a result of the Cooley Statements occurred in California, Packard Bell's principal place of business, rather than Delaware, Packard Bell's state of incorporation.

The court also observes that, as a policy matter, the result in *Carsello* does not apply well to individuals like Cooley. Exercising jurisdiction over Cooley merely by virtue of his position would subject every corporate executive with authority over nationwide employees to jurisdiction in Delaware, or any of the fifty states. Thus, the court finds that Cooley has not regularly done or solicited business or engaged in any persistent course of conduct in Delaware that would satisfy the requirements of § 3104(c)(4).

■ Cooley's two visits to Delaware and his alleged ratification and authorization of the AG Letter mailed to Delaware do not alter this analysis. The 1995 visit to the Hotel DuPont involved a charity event located in Pennsylvania and sponsored by a customer located in Pennsylvania. Thus, it does not appear that the 1995 visit was to solicit business in Delaware. Moreover, Packard Bell does not allege in its complaint that Compaq was attempting to solicit business in Delaware with the AG Letter. Packard Bell argues in its briefs in opposition to Compaq's motion to dismiss Packard Bell's complaint and counterclaims that Compaq sent the AG Letters to influence the purchasing decisions of the Delaware state government. However, Packard Bell cannot amend its complaint through its briefs. *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir.1988).

■ Even assuming that the Delaware AG Letter and Cooley's visit to Computerland in Wilmington were to solicit business, two events five years apart cannot support the requirement that Cooley must regularly do or solicit business in Delaware. Moreover, the two visits and the letter do not establish that Cooley has engaged in a "persistent course of conduct" in Delaware. Finally, the fact that Cooley's 1989 and 1995 "Equity Incentive Plans," or any other employment contracts into which Cooley has entered, are governed by Delaware law does not signify that Cooley regularly does or solicits business or engages in any persistent course of conduct in Delaware. Thus, § 3104(c)(4) does not authorize this court to exercise jurisdiction over Cooley.

### B. *Does § 3104(c) Nonetheless Allow Exercising Jurisdiction Over Cooley?*

Packard Bell argues that even if the literal language of 10 Del.C. § 3104(c) does not support the exercise of jurisdiction over Cooley, the court nonetheless should exercise jurisdiction because the court must construe the statute "to the maximum parameters of the due process clause." *See, e.g., Jeffreys,* 784 F.Supp. at 151. However, in determining whether the Delaware long-arm statute applies, the "application of statutory words to the facts in hand [cannot] be slighted." *Red Sail Easter Limited Partners v. Radio City Music Hall Productions,* C.A. No. 12036, 1991 WL 129174, at *3 (Del.Ch.Ct. July 10, 1991); *see also Ramada Inns,* 1984 WL 247023, at *2 ("When qualifying language is used [in § 3104(c)], the Court should not ignore that language out of a desire to afford maximum jurisdictional coverage"). Neither § 3104(c)(3) nor § 3104(c)(4) of the Delaware long-arm statute authorizes this court to exercise jurisdiction over Cooley. Therefore, the court need not analyze whether exercising such jurisdiction would comport with the Due Process Clause.

The court will issue an Order in accordance with this Memorandum Opinion.